CHARLES SCHMELTZ ET AL. V. M. V. GAREY ET AL.

1. PARTIES—LIEN IN PROBATE COURT.—An order of sale to foreclose a mortgage, sale and confirmation, with an administrator's deed to land sold by the intestate in his lifetime, his vendee being in possession under recorded deed, do not, as to such vendee in possession and not a party to the proceedings, confer title, or affect the rights of such party.

2. SAME—NECESSARY PARTIES IN FORECLOSURE PROCEEDINGS.—Nor is such administrator's sale made valid by the fact that the mortgagee also had a judgment lien upon such land, when such judgment was not made the basis of the action of the Probate Court.

3. JUDGMENT LIEN IN PROBATE COURT.—The Probate Court does not have jurisdiction to call in a purchaser from the intestate, in a proceeding to enforce a judgment lien. Such court, therefore, is wanting in jurisdiction in such case.

4

4. PROPERTY NOT INVENTORIED, it seems, is not under the jurisdiction of the Probate Court, so as to be subject to its orders.

5. COMMUNITY PROPERTY.—That at the marriage the husband had much money, and the wife nothing; that during the marriage relation the parties decreased in fortune, making nothing,—without explicitly tracing the purchase-money or consideration to the separate property of the husband, will not rebut the statutory presumption, that property purchased during the marriage is community property.

APPEAL from Harris.    Tried below before the Hon. James Masterson.

May 23, 1873, M. V. Garey and husband, J. E. Garey, sued Charles Schmeltz in trespass to try title in the usual form for lots 2, 3, 4, 7, and 8, in block number 1, in the town of Clinton, and described as on the Harris tract.

Schmeltz pleaded not guilty, and, by amendment, the three years' statute of limitations, as tenant of Reuben Wright, and asked that Wright be called to defend.    Same day, Wright made himself a party, and, by cross-action, sought to quiet his title.

On the trial, both parties claimed through R. S. Blount.

Plaintiffs read in evidence—

1. Judgment of District Court of Harris county in favor of W. R. Baker *v.* J. J. Cain and R. S. Blount, for $209.75, which judgment was recorded October 2, 1862.

2. Order of sale on probate side of District Court, Harris county, to J. W. Lawrence, administrator of R. S. Blount.

3. Return and confirmation of sale.    Confirmation April 4, 1872.

4. Deed from Lawrence, administrator of Blount, to E. P. Turner for the lots in controversy, with other lands sold at the same time.

5. Deeds from E. P. Turner to plaintiff M. V. Garey for the lots sued for.

6. Deed by Mrs. E. P. Wright, wife of Reuben Wright, of date November 11, 1873, for the lots sued for to J. E. Garey, the plaintiff.

7. Receipt from Mrs. Wright to J. E. Garey for improvements on lots 7 and 8, of date June 6, 1873.

Also, testimony showing a separation of Reuben Wright and his wife, E. P. Wright, who had married in 1860, and going to show a divorce obtained by Reuben Wright in 1871, by proceedings in Virginia.

Schmeltz and Wright, in defense, read in evidence—

1. The petition and exhibit annexed thereto in the case of W. R. Baker *v.* J. W. Lawrence, administrator of Blount, on which the order of sale was made. The petition sets out the judgment of Baker *v.* J. J. Cain and R. S. Blount, and alleges that it has been presented to and allowed by the administrator, and had been approved by the court as a claim against Blount's estate; that Blount, on July 26, 1859, had executed to J. J. Cain, his copartner in the firm of " J. J. Cain & Co.," a mortgage, thereby creating a lien to secure the debts of Cain & Co., which were not then secured by the property of said firm, upon the lands of said Blount in the Rose and Harris grants; that by said mortgage, plaintiff had a lien upon said lands to secure said judgment; praying for an order for the sale for cash of the interest had by Blount in said land at the date of the mortgage, copy of which was made part of the petition.

2. The judgment in the case of Baker *v.* Cain and Blount, rendered November 27, 1860, and recorded October 2, 1862.

3. Execution issued on said judgment January 21, 1861, indorsed: " Returned April 23, 1861, not satisfied; held up by order of plaintiff."

4. Deed from Blount to J. G. Spence, for lots 2, 3, and 4, in block 1, of date 30th of March, 1861, recorded same day.

5. Deed from Spence to defendant Wright for same—lots 2, 3, and 4, in block number 1, recorded January 1, 1868.

6. Deed from Blount to defendant Wright for lots 7 and 8, in block number 1, of date December 24, 1863, and recorded same day.

7. Inventory returned by administrator of estate of Blount

for " 1,000 acres of land on Bray's bayou, valued at $5,000, and other personal property, sworn to, November 27, 1865 "; also, additional appraisement of two lots in Houston, sworn to, December 19, 1865.

8. Power of attorney by Reuben Wright to Fred. Gehring, of date December 19, 1865, authorizing him to take care of, rent, and lease his land on Bray's bayou.

It was proven that Gehring leased the lots to defendant Schmeltz, who, as tenant, had occupied the premises about three years; by direction of Wright, the rents had been paid to Mrs. E. P. Wright, &c.

The opinion of the court gives sufficiently the testimony as to the separation and divorce of Wright and wife as affecting the rights of plaintiff under the deed from Mrs. Wright, in evidence by the plaintiffs.

On the points discussed in the opinion, the court instructed the jury—

3. " The judgment first herein mentioned (Baker *v.* Cain and Blount) took lien upon lots 7 and 8 from the date of its record, and the sale made under order of court had in the case against the administrator of ' Blount' passed title to the purchaser at such sale, and is superior to the title of defendant Wright."

4. " As to lots 2 and 3, the title was acquired by purchase during coverture, and is *prima-facie* community property, as between Reuben Wright and his wife. When it is clearly established that the separate means of either paid for such acquired property, then, as to said parties, the same would belong to him or her whose separate means went in payment thereof; but, under the evidence in this case, I do not deem it proper to submit the question of separate property." * * *

Verdict for plaintiffs for the land in controversy, except half of lots 2 and 3, sold by Blount before the judgment of Baker *v.* Cain and Blount was recorded.

Judgment was rendered accordingly. Defendants appealed.

*Crank & Webb*, for appellants.

I. How far did the judgment in case of Baker *v.* Cain & Co. affect Wright?

Upon this judgment, one execution was issued. The judgment was rendered November 27, 1860, and the execution issued January 21, 1861. Under the decisions of this court, it was Baker's duty, in order to retain any lien, to have executions issued from term to term. (Bennett *v.* Gamble, 1 Tex., 124; Shapard *v.* Bailleul, 3 Tex., 26; Russell *v.* McCampbell, 29 Tex., 31; North *v.* Swing, 24 Tex., 193.)

Judged by these decisions, he had lost all claim to a lien; but to this it may be replied, that on the 7th of December, 1861, all laws for the collection of debts was suspended. (1 Paschal's Dig., title STAY LAW, 859.)

And, also, that by the law of 1866 another execution could not issue until the 1st day of January, 1868. (2 Paschal's Dig., art. 7437.)

We are aware that these laws have been held as protecting judgment creditors up to February, 1868, when the Supreme Court declared them unconstitutional. (Hargrove *v.* De Lisle, 32 Tex., 170; Jones *v.* McMahan, 30 Tex., 719.)

But we maintain, that by the law of 1866, above quoted, all disability against Baker was removed on the 1st day of January, 1868, and that from and after that day Baker could have caused execution to issue against both Cain and Blount, who composed the firm of J. J. Cain & Co. They were both alive on that day. Cain is still alive, and Blount was alive on the 24th day of December, 1868; for on that day he deeded lots 7 and 8 to Wright. After Blount's death, Baker was entitled to an execution against him, under 1 Paschal's Digest, art. 14, but he never, after the 1st day of January, 1868, took out an execution against the firm, or either member of it, and therefore his judgment was dormant.

We are prepared to be met here by the answer that Baker had put his judgment upon record on the 2d of October, 1862. 1 Paschal's Digest, art. 3963, is a sufficient answer to this. That

record of the mortgage was only good for four years, and at the end of that time it lost its force and vitality, under the article quoted; and as it never was "reinscribed," or recorded again, and as Baker never took out an execution after January 1, 1868, he lost all lien.

The first stay law took effect December 7, 1861, and Baker's judgment was rendered November 16, 1860, thus giving over one year in which to make the money, and yet he had one execution issued between the term of the court at which his judgment was rendered and the next succeeding term, and had that returned held up by his order.

The stay laws were not retroactive, and Baker, before the law of December 7, 1861, had suffered his judgment to become dormant, by failing to use that due diligence required by the laws in force before and up to that date. Therefore there was no virtue in the recording of his judgment in 1862, because all lien had been lost before its record. At the dates of Wright's deeds, in either view of the matter as above presented, Baker had no lien, and Wright acquired a good title.

II. We next consider what effect the judgment of Baker v. Cain & Co., connected with the decree or order of sale obtained by Baker against the administrator of Wright, has upon the title of Wright.

We invite the consideration of the court to the petition in said case, and of the mortgage, a certified copy of which was made part of the petition.

The mortgage recites a dissolution of the firm of J. J. Cain & Co., and that Cain had conveyed six lots in Houston to Blount, and also the property and business of the firm; and binds Blount to hold his three thousand acres of land on Bray's bayou "subject to any debt that may be owing by the firm, and not secured by the property of the firm." By reference to Baker's petition, it will be, seen that he nowhere in it claims that his judgment was a lien, but he sues upon the mortgage, and claims only that he had a lien by virtue of the mortgage.

And the judgment of the court upon his petition adjudicated only a lien under the mortgage. It recites: "It appearing to the satisfaction of the court . . . . . that the lands described in plaintiff's petition . . . . . are subject to the lien as claimed in the petition, it is therefore . . . . . adjudged that the said lien be foreclosed, and that the administrator . . . . . sell . . . . . all the right, title, and interest which said Blount had in and to so much of said lands on the said 26th day of July, 1859, the date said lien attached, . . . . . as may be required to satisfy said lien."

The effect of Baker's action was an abandonment of any lien under his judgment against Cain & Co., and the judgment of the court was in perfect accordance with the case as the petition made it, even to decreeing, as alleged and prayed for, that Baker had a lien from the 26th day of July, 1859, the date of the mortgage. These being the facts of the case, the court clearly erred in its first, third, and fifth charges given to the jury.

But, as we have shown, the sale was not ordered on any judgment lien, and the court gravely erred in assuming that it had been; and this it did, not only in said remark, but also in its charges given to the jury.

The court could not give Baker, nor those claiming under him, any greater right than Baker claimed for himself. He did not claim any lien by his judgment against Cain & Co., but only claimed a lien in his favor under the mortgage from Blount to Cain. This was the only point as to lien before the court in his suit against Blount's administrator, and this was the only question of lien which the court passed upon. His petition sought, under the present Probate law, to enforce his claim to a lien under the mortgage. (2 Paschal's Dig., art. 5705.) It was not an action of a creditor upon a simple debt for a sale by the administrator, for in that case, the sale, instead of being ordered, as it was, for cash, must have been on a credit of six months. (2 Paschal's Dig., art. 5707.)

And having rested his claim of lien alone upon the mortgage, he and the appellees are bound by it, and can claim no greater right.

III. The appellees must stand or fall by the decree or order of sale granted to Baker *v.* Blount, administrator.

Wright was not a party to that suit, and therefore should not be affected by it.

But if the mortgage had been a subsisting lien, such as Baker could have availed himself of, Wright was a necessary party to the suit, because he purchased of Spence and Blount subsequent to the date of the mortgage, and had the right to redeem by paying off the mortgage. (Story's Eq. Pl., 193; Mills *v.* Traylor, 30 Tex., 7; Hall *v.* Hall, 11 Tex., 526; Buchanan *v.* Monroe, 22 Tex., 537; Floyd *v.* Borland, 33 Tex., 777; Ballard *v.* Anderson, 18 Tex., 377; Chapman *v.* Lacour, 25 Tex., 94; 1 Danl. Ch. Pr., 240; Caldwell *v.* Taggart, 4 Pet., 190; Wendell *v.* Van Renssalear, 1 Johns. Ch., 349; Whiting *v.* Bank of the United States, 13 Pet., 6; 2 Hilliard on Mortgages, 110, 111; Shannon *v.* Marsellis, Saxton, (N. J.,) 413; 2 Green's Ch., (N. J.,) 125; 2 Green's Ch., (N. J.,) 125.)

Had Wright been a party, he could have set up his defenses, and also, had the mortgage been direct from Blount to Baker, Wright would have been entitled to have had the decree to require the administrator to sell lands which Blount had not conveyed away. * * *

IV. The property in controversy in this suit was the separate property of Reuben Wright, and so clearly proven by himself; and in this he is sustained by the witness C. J. Wright. Therefore, under the law, this property belonged to Reuben Wright, and, upon divorce, his wife had no claim to it. (Fitts *v.* Fitts, 14 Tex., 450; Cartwright *v.* Cartwright, 18 Tex., 626-644.)

*W. P. & E. P. Hamblen*, for appellees.

I. As to the paper title held by appellees from Turner, and

by Turner through the administration of Blount, whose title was admitted, we believe that under the decisions of this court the charge of the court was warranted, and the title exhibited by plaintiffs invested them with title to the lands. We cite Cravans v. Wilson, 35 Tex., 52; Phillips v. Lesser, 32 Id., 741; Sessums v. Botts, 34 Id., 335.

Their offer to redeem was not sufficient. They could do no less than redeem the whole premises by paying the whole debt, and could not redeem by paying a portion, or taking out of the entire premises any part. (Hilliard on Mort., sec. 27, pp. 397, 430; 2 Wash. on Real Prop., 164, 165.)

II. As to the right of the wife to convey when abandoned by her husband, we deem it sufficient to cite the following authorities on this point: Fullerton v. Doyle, 18 Tex., 3; Wright v. Hays, 10 Id., 130; Blanchet v. Dugat, 5 Id., 507; Cheek v. Bellows, 17 Id., 616.

The pretended divorce in Virginia could have no other effect than to show the abandonment by the husband. It was an outrageous act on his part, and was only evidence of his cruelty. It was void, as far as it affected her rights of property. (Jackson v. Jackson, 1 Johns., 424.)

The courts of Virginia could not decree a divorce for acts committed in Texas, if the charge that they were committed were true.

In Pennsylvania, it is held that the injured spouse must seek redress in the State where the injury was committed, unless the defendant removed from the common domicil. (Reed v. Elder, 52 Penn., 308.)

So in New York the same doctrine is held, where there is no personal appearance of the defendant. (Vischer v. Vischer, 12 Barb., 640; Hoffman v. Hoffman, 46 N. Y., 30.)

And most of the State courts have held a divorce so procured to be a consummation of a fraud on the laws and courts of the State where the cause of divorce was alleged to have occurred, and have refused to pay them any respect whatever. (Holmes v. Holmes, 4 Lans., (N. Y.,) 388; Lyon v.

Lyon, 2 Gray, (Mass.,) 369; Greenlaw v. Greenlaw, 12 N. H., 200; Commonwealth v. Blood, 97 Mass., 538.)

GOULD, ASSOCIATE JUSTICE.—It is our opinion that the court erred in instructing the jury that the legal title to lots 7 and 8 was in the plaintiffs.

The plaintiffs claimed under an order of sale made in the administration of the estate of Blount in December, 1871, on the application of Baker, the holder of a judgment against Blount, of date November 27, 1860, and recorded October, 1862. After this, judgment was recorded, and thereby took lien on the lots 7 and 8. Blount conveyed them to Reuben Wright, who went into possession, and, by his tenants, has so continued. The application of Baker alleged nothing as to the record of the judgment, or as to the existence of a judgment lien, but claimed a lien through a mortgage to Cain; and the order of sale, on its face, purports to be an enforcement only of that mortgage lien.

Regarded as a proceeding to foreclose a mortgage, instituted after the mortgagor had parted with all title in the premises to a vendee who was in possession under a recorded deed, but who was not made a party, the order and sale were insufficient to affect the title or right of possession of that vendee. (Lockhart v. Ward, 45 Tex., 227; Byler v. Johnson, Id., 509; Morrow v. Morgan, 48 Tex., 304.)

Though there was in fact a judgment lien kept alive until after Blount's death, yet, not having been asserted or enforced in the probate proceedings, it could scarcely operate to give to those proceedings a conclusiveness, as to third parties, which they would not otherwise have.

Conceding, however, that during the lifetime of Blount his vendee, (Wright,) who bought after the judgment lien had attached, took a title inferior to that of a purchaser at execution sale under the judgment, it does not follow that after Blount's death the judgment lien could be enforced by proceedings in court, so as to affect Wright's title, without giv-

ing him an opportunity to be heard. Where the judgment debtor, after conveying, dies, and it becomes necessary to revive the judgment, the authorities are that in such case the vendees should be made parties. (Freem. on Exec., sec. 87; Jackson *v.* Schaffer, 11 Johns., 513; Young *v.* Taylor, 2 Binn., 228; Lusk *v.* Davidson, 3 Pen. & W., 229; Morton *v.* Croghan, 20 Johns., 106; Polk *v.* Pendleton, 31 Md., 118; Tidd's Prac., 1021, 1023.)

Says Freeman: "None but those who are made parties to the *scire facias* are affected by the judgment of revivor. One about to prosecute a *scire facias* to revive a judgment lien against the successors in interest of a deceased defendant, in determining who are to be made parties, must be governed by the same principles which would be applicable to the foreclosure of a mortgage, or other lien. He must bring in all persons holding title under the defendant, but subordinate to the lien; but he need not, and cannot, proceed against persons where claims are adverse to the defendant's title, or paramount to the lien." There is nothing in the Probate law in force at the time this application was made, and the sale ordered, indicating that in administering estates judgment liens are to be placed on a higher footing than other liens. (Paschal's Dig., arts. 5674, 5705.) Hence, if we should look to the alleged judgment lien, it does not appear that it could be enforced on the probate side of the court, so as to affect the rights of those who had purchased from Blount, and were in possession under their purchase.

There is still another objection to the title under the sale worthy of consideration. It is claimed that the lots in controversy, having been conveyed only by Blount, were not inventoried as part of his estate, did not constitute any part thereof, and that the court had no jurisdiction to order their sale. As we are unable, from the record, to say whether the tract of land inventoried embraced these lots or not, we will not undertake to pass upon a question so important.

Because Reuben Wright was in possession of lots 7 and 8,

claiming under a recorded deed from Blount, his title and right of possession were not affected by the proceedings and sale to which he was not a party, and this notwithstanding the judgment of Baker constituted a valid lien on the lots in his hands.

The error in the charge as to the title in these lots is fatal to the judgment.

It is deemed necessary to pass upon only one other of the numerous questions discussed in appellant's brief. The plaintiffs also claimed title under a conveyance from Mrs. Wright, which is claimed to be valid as a conveyance of community property by her after abandonment by her husband, and at all events as valid to the extent of her half interest in the community after her alleged divorce from her husband. One of the grounds on which this conveyance is disputed, is that the lots were acquired with the separate means of Reuben Wright, and were therefore his separate property, although acquired during marriage. The evidence in support of this claim was the testimony of Wright as to the amount of his means at the date of his marriage in 1860, estimated by him at over $100,000; that his wife, so far as he knew, had nothing, save an interest in an estate in New Jersey; and that during his marriage he did not accumulate property, but, on the contrary, lost largely. He says that the means and money used in the purchase of the lots were acquired before Mrs. Wright became his wife; but, from his whole testimony, it is evident that this is an inference from his alleged failure during his marriage to add to his property, rather than a statement of his ability to trace the particular means used in the purchase. Outside of his own testimony, there is none other on the point, save that of C. T. Wright, that his uncle (Reuben Wright) had large means when he married Mrs. Wright, and, so far as witness knew, she had nothing; and on cross-examination he said that it was his impression that Reuben Wright paid for the lots with his separate means, but that he did not know of his own knowledge. Some of the

lots were purchased in 1863, and others in 1868, eight years after the marriage.

Our opinion is, that the court did not err in holding that this evidence was too indefinite to rebut the presumption established by the statute, that property acquired during marriage is community property, and in refusing to submit that question to the jury. The proof should have been "clear and conclusive." (Love *v.* Robertson, 7 Tex., 11.) It was not a case where specific property, proven to have been separate estate, was exchanged; but a case in which it was necessary to trace the means through mutations and changes, and this should have been done "clearly and indisputably." (Chapman *v.* Allen, 15 Tex., 283.) The means invested should have been traced back to the separate estate, not through indefinite channels and unknown changes, but connectedly and plainly.

It is developed, that the title to some land in Minnesota was taken in Mrs. Wright's name, for the purpose of securing it to her; also, that Mrs. Wright carried on a millinery store several years in her own name; and these are illustrations of the changes which the property may have passed through. These changes may have been such that the proceeds have become community property.

The evidence as to the separate ownership by Wright of the means used in purchasing the lots was too indefinite to support a verdict, and the court did not err in so treating it, and refusing to submit that question to a jury.

Because of the error in the charge, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.