**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00399-CV**
_____

**EMILE JUBERT DAIGLE JR., Appellant**

**V.**

**BONNIE DAIGLE, Appellee**

**On Appeal from the 279th District Court**
**Jefferson County, Texas**
**Trial Cause No. C-218,141**

**MEMORANDUM OPINION**

Emile Jubert Daigle Jr. (Emile or appellant) filed this appeal of a final decree of divorce from Bonnie Daigle (Bonnie or appellee). In six related issues, Emile argues that the trial court mischaracterized a particular "mutual fund IRA" as community property and he argues that he was improperly divested of his separate property. Finding no error, we affirm the final decree of divorce.

1

FACTUAL BACKGROUND

Emile and Bonnie married on October 25, 1995. Bonnie filed for divorce in April 2013. On June 5, 2014, the trial court held a hearing regarding the division of property. At the hearing, the parties disputed the character of what was listed on the "Comparative Inventory and Appraisement" as the "AXA Equitable IRA[,]" which was valued at more than $200,000. At the hearing, Bonnie argued that the IRA was community property, and Emile argued the IRA was his separate property.

Bonnie testified that the IRA account was created around seven years after she and Emile married. She stated that she "never had any reason to believe it was separate property." Bonnie offered into evidence a letter from Equitable dated October 3, 2002, which began "[w]e are pleased to welcome you to our Equitable Accumulator® Plus℠ deferred variable annuity program[.]" The letter included an "Accumulator® Plus℠ Contract Summary" (Contract Summary), listing Emile as the "Owner" and "Annuitant" and Bonnie as the "Beneficiary[.]" It listed the "Contract Type" as "Equitable Accumulator Plus (Rollover IRA)" with a "Contract Number" of "3-02638743[.]" The Contract Summary listed a "Contract Date" of October 3, 2002, an "Initial Contribution" amount of $107,735.08, and a "Total Initial Account Value" of $112,044.48.

2

At the hearing, Bonnie agreed that the letter was a "welcome letter that was received in 2002 [when] opening up this IRA[.]" When Bonnie was asked about the initial contribution to the IRA in 2002, Bonnie replied "I don't recall what happened in 2002." Bonnie also testified that for several years, she and Emile had "several IRAs[]" and that she "didn't keep up with that that much[]"and she "didn't keep up with what was going in and out of any of them." When asked whether she knew that Emile had separate property from a previous marriage before he and Bonnie married, Bonnie responded "I didn't know that for sure[,]" but she agreed that she was aware he had an account through Equitable when they got married.

Emile testified that the disputed IRA was with Equitable Life Insurance when he bought it, but at the time of the hearing it was with AXA Equitable. Emile explained that he opened the original account on December 9, 1990, with a little more than $80,000. Emile testified that in 1990 when he opened the account, he was married to Janie, and Emile and Janie divorced in January of 1995. According to Emile, as part of his divorce from Janie, he was awarded the account with Equitable. He offered into evidence an "Inventory and Appraisement of Emile J. Daigle, Jr.," dated September 29, 1994, which he testified related to his divorce from Janie. The document listed account 40310720 as "Type of insurance: whole"

3

with a 1991 issuance date. In the final decree of divorce between Emile and Janie, the court awarded Emile "the annuity with Equitable Life Insurance, policy number 40310720" as his separate property.

Emile testified that "[a]pparently sometime in 2002 there was a merger between AXA and Equitable and the -- apparently the policy changed, or the annuity, versus what their new products were gonna be, changed." When asked about the 2002 letter from Equitable that Bonnie had testified was a "welcome" letter, Emile testified as follows:

> [EMILE'S ATTORNEY]: Okay. Can you explain what this document is?
>
> [EMILE]: It's apparently a form -- informing us that the Equitable accumulator plus annuity program has been replaced.
>
> [EMILE'S ATTORNEY]: What does that -- what do you mean by that?
>
> [EMILE]: Well, apparently their brand from Equitable going to AXA's, their products were basically named different.
>
> [EMILE'S ATTORNEY]: So, suddenly what you had been calling an annuity and insurance policy was renamed, correct?
>
> [EMILE]: That's correct.
>
> [EMILE'S ATTORNEY]: It was renamed a rollover IRA, right?

4

[EMILE]: That's correct, Equitable accumulator plus and then, parentheses, and rollover IRA.

Nothing on the face of the letter or the attached Contract Summary specifically provides that it is renaming or replacing an account, and there were no other documents entered into evidence that clarified or referenced the new account as being a renaming or replacement of "the annuity with Equitable Life Insurance, policy number 40310720" that Emile received in his prior divorce.

Emile testified about his understanding of the AXA Equitable IRA and various reports and summaries from Equitable. He offered into evidence fifteen reports from Equitable for the "Accumulator Plus (Rollover IRA")," account number "302 638 743[.]" The dates on these reports were as early as June 16, 2006, and as late as June 21, 2013. The reports showed a "Contract Date: October 03, 2002[.]" None of the reports showed any contributions for the period of time covered by the reports. One of the reports provided contract information on account number 40310720, referring to it as "IL-RESTRUCTURE" with the last premium paid June 9, 1999. Emile also offered into evidence four reports from Equitable for account number 40310720. Some of the reports he introduced for account number 40310720 referred to the account as "Flexible Premium Variable Life Insurance[,]" and reflected dates as early as December 2, 2007, and as late as

5

February 6, 2013. The February 6, 2013 report included a heading that it was a "NOTICE OF POLICY LOAN FORECLOSURE[.]" At the hearing, Emile testified this account was closed in March of 2013, for nonpayment of premiums. Notably, the account number on the foreclosed account is listed at 40310720, which matches the account number of the Equitable Account Emile received in the 1995 Divorce Decree.

Emile submitted a copy of a fax from a financial advisor at Equitable-Texas. The fax was hand-dated "12/6/95" and time-stamped "12/07/95" and also included two attachments. A handwritten message on the front sheet of the fax states the following:

> E.J.
>
> Here are the reports on your account as well as the girls [sic] accounts. The Phoenix Growth fund for Beth is worth $10,034.76 as compared to $7,461.68 last December 27th. Templeton hasn't had as great a year; hopefully we've been buying low. I'll see you on the 16th.
>
> Brian

At the hearing, Emile explained that Beth is his daughter. One attachment was dated "12/04/95" and included a "Client Quote: EQS Account # 466773658D01" with an "Account Value" of $16,935.70. The "Registration Name" on this page read:

E.J. DAIGLE C/F
BETH D DAIGLE
UGMA/TX

Another attachment provided a "Client Quote: Contract # 40310720" with a "Total Account Value" of $90,576.07, and it had a handwritten notation stating "less 20,000 loan[.]" Emile testified that this fax concerned the same account he was awarded in his divorce from Janie.

According to Emile, the balance of his Equitable account was $83,316 prior to his marriage to Bonnie, and he testified that he had not put money into or taken money out of the account during his marriage to Bonnie. In the inventory of property that Emile filed before trial, Emile valued the disputed account at $205,192.99. In Bonnie's inventory, she valued the disputed account at $212,538.82. In its Findings of Fact and Conclusions of Law, the trial court showed a value of the disputed IRA account as "approx. $212,538."

On July 17, 2014, the trial court rendered judgment that the IRA account in question was community property. Emile filed a motion to reconsider, which was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). The trial court issued a decree of divorce on August 28, 2014, which awarded Emile "[o]ne-half (50%) plus any gains or losses of the balance of the AXA Equitable IRA, Accumulator Plus (Rollover IRA), Contract No. 302638743 as of July 17, 2014 in the name of

7

Emile Jubert Daigle, Jr. LESS Eighteen Thousand Dollars ($18,000.00) awarded to wife in this Final Decree of Divorce." On September 14, 2014, the trial court issued Findings of Fact and Conclusions of Law, including that "the AXA Equitable IRA, Accumulator Plus (Rollover IRA), Contract No. 302638743, value: approx. $212,538[]" was acquired during the marriage other than by gift or inheritance. Emile timely filed a notice of appeal.

ISSUES ON APPEAL

On appeal, Emile argues that the trial court erred by characterizing the AXA Equitable IRA or "the mutual fund IRA" as community property. Specifically, he raises the following arguments: (1) the trial court abused its discretion in characterizing the IRA as community property; (2) the evidence was factually insufficient to support the characterization of the IRA as community property; (3) the evidence was legally insufficient to support the characterization of the IRA as community property; (4) the characterization of the IRA as community property requires reversal because it was against the great weight and preponderance of the evidence; and (5) characterizing the IRA as community property improperly divests Emile of his separate property, in violation of Article XVI, Section 15 of the Texas Constitution. Appellant also argues in the alternative that, because during Emile and Bonnie's marriage the value of the IRA had never dropped below

8

the value it had at the time the couple married, and applying the "community out first" rule, that portion of the account that Emile owned at the time of marriage remains his separate property.

STANDARD OF REVIEW

The trial court is vested with broad discretion in dividing the community estate, and we presume it properly exercised that discretion. *See Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). Absent a clear abuse of discretion, we will not disturb that division. *See Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974); *Boyd v. Boyd*, 67 S.W.3d 398, 406 (Tex. App.—Fort Worth 2002, no pet.). An abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence and some evidence supports its decision. *See In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding). Furthermore, an abuse of discretion does not occur as long as some substantive and probative evidence exists to support the trial court's decision. *See Jenkins v. Jenkins*, 16 S.W.3d 473, 477 (Tex. App.—El Paso 2000, no pet.).[1]

In this case, the trial court entered findings of fact and conclusions of law. Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *See Anderson v. City of Seven Points*, 806

---

[1]A party may raise legal and factual sufficiency complaints for the first time in an appeal from a bench trial. *See* Tex. R. App. P. 33.1(d).

9

S.W.2d 791, 794 (Tex. 1991). We apply the same legal sufficiency standards in reviewing a trial court's findings of fact as when reviewing evidence supporting a jury's answer. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In a bench trial, the court, as fact finder, is the exclusive judge of the witnesses' credibility and the weight given their testimony, and is free to resolve any inconsistencies in the evidence. *See Iliff v. Iliff*, 339 S.W.3d 74, 83 (Tex. 2011). It is free to believe some, all, or none of a witness's testimony. *See Rivas v. Rivas*, No. 01-10-00585-CV, 2012 Tex. App. LEXIS 412, at *5 (Tex. App.—Houston [1st Dist.] Jan. 19, 2012, no pet.) (mem. op.).

CHARACTERIZATION OF PROPERTY

"All property, both real and personal, of a spouse owned or claimed before marriage, and that acquired afterward by gift, devise or descent, shall be the separate property of that spouse . . . ." Tex. Const. art. XVI, § 15. The Texas Family Code defines separate property as that property owned by a spouse before marriage, acquired during the marriage by gift, devise, or descent, and the recovery for personal injuries sustained during the marriage. *See* Tex. Fam. Code Ann. § 3.001 (West 2006). Community property consists of the property, other than separate property, acquired by either spouse during the marriage. *See id*. § 3.002 (West 2006). In Texas, property possessed by either spouse during or on

10

dissolution of the marriage is presumed to be community property, absent clear and convincing evidence to the contrary. *See id*. § 3.003 (West 2006). Clear and convincing evidence is the degree of proof that will produce in the mind of the trier of fact a firm belief or conviction about the allegations sought to be established. *See* Tex. Fam. Code Ann. § 101.007 (West 2014); *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 31 (Tex. 1994). To overcome this presumption, the spouse that claims the property as separate property must trace and clearly identify the property claimed to be separate, which involves establishing the separate origin of the property with evidence showing the time and means by which the property was acquired by the spouse. *See Smith v. Smith*, 22 S.W.3d 140, 144 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (op. on reh'g).

The characterization of property as either community or separate is determined by the inception of title to the property. *Id*. at 145. Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested. *See id*. (citing *Strong v. Garrett*, 224 S.W.2d 471, 474 (Tex. 1949), and *Winkle v. Winkle*, 951 S.W.2d 80, 88 (Tex. App.—Corpus Christi 1997, pet. denied)).

If the evidence shows separate and community property has been commingled so as to defy segregation and identification, the burden is not

11

discharged and the statutory presumption prevails. *See McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex. 1973). Mere testimony that property was purchased with separate property funds, without any tracing of the funds, is generally insufficient to rebut the community presumption. *See McElwee v. McElwee*, 911 S.W.2d 182, 188 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (citing *Schmeltz v. Garey*, 49 Tex. 49, 60-61 (Tex. 1878)). "Any doubt as to the character of property should be resolved in favor of the community estate." *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.) (citing *Akin v. Akin*, 649 S.W.2d 700, 703 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.).

When separate property and community property are commingled in a single account, we presume that the community funds are drawn out first, before separate funds are withdrawn, and where there are sufficient funds at all times to cover the separate property balance in the account at the time of divorce, we presume that the balance remains separate property. *See Smith*, 22 S.W.3d at 146 (citing *Welder v. Welder*, 794 S.W.2d 420, 433 (Tex. App.—Corpus Christi 1990, no writ), and *Horlock v. Horlock*, 533 S.W.2d 52, 58 (Tex. Civ. App.—Houston [14th Dist.] 1975, writ dism'd w.o.j.)).

ANALYSIS

To determine whether the trial court abused its discretion, we must examine whether the evidence is legally and factually sufficient to support the trial court's conclusion that the disputed account is community property. *See Boyd*, 131 S.W.3d at 611. We begin by presuming that the property owned upon the dissolution of the marriage is community property, a presumption that Emile could overcome only by a showing of clear and convincing evidence. *See* Tex. Fam. Code Ann. § 3.003. Consequently, the burden of proof rests with Emile to show by clear and convincing evidence that the funds he used to establish the disputed account (account number 302638743), were his separate property. *See Smith*, 22 S.W.3d at 144.

Emile argues that the trial court erred in finding "the entire 'AXA Equitable IRA, Accumulator Plus (Rollover IRA)'" was "always community property during the parties' marriage." The trial court found the disputed IRA was acquired during the marriage, stating "[d]uring marriage, [Bonnie] and [Emile] acquired the following property other than by gift or inheritance with the values shown: . . . the AXA Equitable IRA, Accumulator Plus (Rollover IRA), Contract No. 302638743, value: approx. $212,538." Emile's appellate brief argues that tracing rules "which [the trial court] has apparently overlooked[]" establish "both the $83,316 and the

13

remainder of the $212,538-plus mutual fund remained Appellant's separate estate, since there was no commingling, and no additions to, or distributions from, the AXA/Equitable Life fund during the parties' marriage." We disagree.

Emile claims $83,316 was awarded to him as separate property in a divorce prior to his marriage to Bonnie. Emile argues he funded an Equitable Life Insurance policy number 40310720 with $83,316 of his separate property. In his divorce from Janie, the court awarded Emile "the annuity with Equitable Life Insurance, policy number 40310720" as his separate property. The trial court had before it evidence that established that the "Incentive Life insurance policy from AXA Equitable[,]" account number 40310720, was terminated in March or April of 2013 for nonpayment of premiums. Therefore, according to the documents in the record, the account numbered 40310720 had been terminated prior to the date of Emile and Bonnie's trial in 2014.

The documentary evidence also establishes that the disputed IRA, AXA Equitable Accumulator Plus Rollover IRA, account or policy number 302638743, was established in 2002, with a "Contract Date" of October 3, 2002, which was several years after Emile and Bonnie were married. There was a lack of documentary evidence to clearly establish that the funds used to establish account number 302638743 were Emile's separate property. Although Emile testified that

this account was an annuity or insurance account that had been renamed as a rollover IRA, the evidence does not provide clear and convincing evidence that the disputed IRA account was created from his separate property. The trial court could have reasonably concluded that, even with Emile's testimony, the evidence was insufficient to trace the origin of the funds used to create account number 302638743 to Emile's separate property. *See McElwee*, 911 S.W.2d at 188.

Emile failed to provide clear and convincing evidence that would be sufficient to overcome the presumption of community property. We conclude that the evidence was legally and factually sufficient to support the trial court's finding that the disputed IRA was community property, that the court's findings of fact and conclusions of law were not against the great weight and preponderance of the evidence, and that the trial court did not abuse its discretion. We overrule Appellant's first four issues. Additionally, because we conclude that the trial court did not err in characterizing the disputed IRA as community property, Emile was not improperly divested of his separate property in violation of the Texas Constitution, and we also overrule Appellant's fifth issue.

Appellant argues in the alternative that the trial court should have applied the "community out first" rule and it should have awarded him a portion of the disputed IRA equal to its value at the time Emile and Bonnie married. The

"community out rule" only applies where the evidence shows that separate and community funds have been commingled in a single account. *See Smith*, 22 S.W.3d at 146. Emile testified that he "never" took any money out of the account. Furthermore, there was no evidence of any commingling of separate and community funds nor any transactions involving the disputed account. Therefore, we conclude that the "community out first" rule is inapposite. *See Welder*, 794 S.W.2d at 434. Accordingly, we overrule Appellant's final issue.

Finding no error, we overrule all of Appellant's issues, and affirm the judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on February 2, 2015
Opinion Delivered August 27, 2015

Before McKeithen, C.J., Horton and Johnson, JJ.

16