Lorraine Lynn ZIEBA, Appellant,

v.

Bill Lee MARTIN, Appellee.

No. 14–94–00104–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 12, 1996.

Rehearing Overruled Sept. 12, 1996.

Peter R. Meeker, Austin, for appellant.

Kenneth D. Junck, Houston, for appellee.

Before HUDSON, FOWLER and EDELMAN, JJ.

## OPINION ON REHEARING

FOWLER, Justice.

We overrule appellant's motion for rehearing, but withdraw our previous opinion and substitute this one for it. Appellant, Lorraine Zieba, appeals from a judgment dividing the marital estate in her divorce from appellee, Bill Martin. Zieba and Martin lived together for two and one-half years before they were married on February 14, 1985. The couple separated in March 1990, when Zieba began divorce proceedings. The case was tried to the court in July 1993, resulting in a Final Decree of Divorce and Judgment. In support of its property division, the trial court entered findings of fact and conclusions of law.[1] The court also granted some but not all of Zieba's timely requested additional and amended findings of fact and conclusions of law. In ten points of error, Zieba attacks the trial court's judgment and findings with regard to the property division and the award of attorney's fees. Because we find the trial court abused its discretion in dividing the marital estate and because the court's findings cannot support its award of attorney's fees, we reverse the judgment below.

1. These initial findings do not distinguish findings of fact from conclusions of law.

## I. NO FINDINGS AND CONCLUSIONS ON VALUE

■ At the outset, we address Zieba's contention in point of error ten that the trial court erred in failing to make findings of fact and conclusions of law as to the values of the community and separate estates and the basis for its determination of her reimbursement claims. The trial court's initial findings of fact and conclusions of law do not contain findings on these issues. Although Zieba timely requested additional findings on these issues, the court denied her request.

■ If findings of fact and conclusions of law are properly requested, the trial court has a mandatory duty to file findings and conclusions. *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex.1989). The trial court's failure to comply with a proper request to prepare and file findings and conclusions is presumed harmful, unless the record affirmatively shows that the complaining party suffered no injury. *Id.* An appellant is harmed if there are two or more possible grounds on which the court could have ruled and the appellant is left to guess the basis for the trial court's ruling. *Goggins v. Leo*, 849 S.W.2d 373, 379 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Electronic Power Design, Inc., v. R.A. Hanson Co.*, 821 S.W.2d 170, 171 (Tex.App.—Houston [14th Dist.] 1991, no writ). The proper remedy in that situation is to abate the appeal and direct the trial court to correct its error pursuant to rule 81(a) of the Rules of Appellate Procedure.[2] *Cherne Indus.*, 763 S.W.2d at 773; *Electronic Power*, 821 S.W.2d at 171–72.

In this case, Zieba cannot claim harm because she argues the property division was an abuse of discretion even if the court chose to accept Martin's valuations. In essence, then, we have no dispute as to the valuations the court made because we have been asked to review the case using Martin's valuations. Viewed in that posture, we hold that the trial court's failure to file findings and conclusions on value was not harmful and abatement of this case is unnecessary. *See Humble v. Humble*, 805 S.W.2d 558, 563 (Tex.App.—Beaumont 1991, writ denied) (holding that trial court is not compelled to make findings of value where there was no material dispute of value). Point of error ten is overruled.

## II. STANDARD OF REVIEW

■ The next question confronting this court is the standard of review. Attacking the sufficiency of the evidence, Zieba argues the trial court's findings do not support the court's division of the marital estate. The trial court, however, has wide discretion in dividing the estate of the parties and that division should be corrected on appeal only when an abuse of discretion has been shown. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). Under this abuse of discretion standard, the legal and factual sufficiency of the evidence are not independent grounds of error, but are merely relevant factors in assessing whether the trial court abused its discretion.[3] *Mai v. Mai*, 853 S.W.2d 615, 618 (Tex.App.—Houston [1st Dist.] 1993, no writ); *In re Marriage of Driver*, 895 S.W.2d

2. In *Cherne Industries*, the supreme court implicitly overruled previous decisions of this court holding that "reversal and remand" is the proper remedy for the trial court's failure to make findings and conclusions. *See e.g., Randall v. Jennings*, 788 S.W.2d 931, 932 (Tex.App.—Houston [14th Dist.] 1990, no writ); *Barnes v. Coffman*, 753 S.W.2d 823, 824 (Tex.App.—Houston [14th Dist.] 1988, writ denied); *Joseph v. Joseph*, 731 S.W.2d 597, 598 (Tex.App.—Houston [14th Dist.] 1987, no writ).

3. In a non-jury case, the trial court's findings of fact have the same force and dignity as does a jury verdict. *Criton Corp. v. Highlands Ins. Co.*, 809 S.W.2d 355, 358 (Tex.App.—Houston [14th Dist.] 1991, writ denied). Findings of fact are reviewable for the legal and factual sufficiency of the evidence supporting them by the same stan-

dards as are applied in reviewing the legal and factual sufficiency supporting the jury's answers to jury questions. *Id.* That standard is well-settled and need not be repeated here. Conclusions of law, on the other hand, are reviewable when attacked as a matter of law, but not on grounds of factual insufficiency. *Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). The standard of review of is whether the conclusions of law drawn from the facts are correct. *Zieben v. Platt*, 786 S.W.2d 797, 802 (Tex.App.—Houston [14th Dist.] 1990, no writ); *Mercer*, 715 S.W.2d at 697. Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Nelkin v. Panzer*, 833 S.W.2d 267, 268 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.).

875, 877 (Tex.App.—Texarkana 1995, no writ). An abuse of discretion does not occur where the trial court bases its decision on conflicting evidence or where some evidence of a substantial and probative character exists to support the trial court's division. *See Wood v. O'Donnell*, 894 S.W.2d 555, 557 (Tex. App.—Fort Worth 1995, no writ); *D.R. v. J.A.R.*, 894 S.W.2d 91, 95 (Tex.App.—Fort Worth 1995 writ denied).

## III. REIMBURSEMENT

■ In points of error three through eight, Zieba argues the trial court refused to fully reimburse the community for the community payment of a purchase money note, for improvements to Martin's separate property, and for certain personal expenditures by Martin. The trial court awarded Zieba $100,657 as her one-half of the reimbursement to the community estate. In light of this award, Zieba attacks the factual sufficiency of the evidence supporting the trial court's initial findings and conclusions 9, 11, 12, 17, and 23, which generally support the trial court's property division. As we noted, "factual insufficiency" is not a proper ground for reversal under an abuse of discretion standard. *See Wood*, 894 S.W.2d at 557; *D.R.*, 894 S.W.2d at 95. Furthermore, while these initial findings and conclusions do not differentiate findings of fact from the conclusions of law, the findings are clearly conclusions of law that the property division was "just and right." Thus, we may review the conclusions of law only to determine whether they are correct. *See id.*

■ Reimbursement is an equitable doctrine, and a court of equity is bound to look at all the facts and circumstances and determine what is fair, just and equitable. *Penick v. Penick*, 783 S.W.2d 194, 197 (Tex. 1988); *Gutierrez v. Gutierrez*, 791 S.W.2d 659, 663 (Tex.App.—San Antonio 1990, no writ). The trier of fact should consider the benefits and detriments to each estate. *Gutierrez*, 791 S.W.2d at 553. "Reimbursement is not available as a matter of law but lies in the discretion of the court." *Id.* (quoting *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982)). Great latitude must be given to the trial court in applying equitable principles to value a claim for reimbursement. *Penick*, 783 S.W.2d at 198. An equitable claim for reimbursement is not merely a balancing of the ledgers between the marital estates. *Id.* The discretion to be exercised in evaluating a claim for reimbursement is equally as broad as the discretion exercised in making a just and right division of the community estate. *Id.*; *Gutierrez*, 791 S.W.2d at 663.

### A. Purchase Money Indebtedness

■ In points of error three and four, Zieba contends the trial court abused its discretion by reimbursing her only $30,657 for her share of community funds spent on Martin's separate property commercial real estate. As confirmed in the judgment, Martin owns as his separate property certain commercial real estate located on 5600 W. 34th Street in Houston. Martin is the sole shareholder of Texas Sign Erectors (Texas Sign), a corporation that installs advertising signs for oil companies. The business is located on the 34th Street property. The court apparently concluded that Texas Sign was a community asset because it did not include that property among the property listed in the judgment as "confirmed separate property" of one or the other spouse. *See* TEX.FAM.CODE ANN. §§ 5.01, 5.02 (Vernon 1993) (property other than separate property is community property and property possessed by either spouse during or on dissolution of marriage is presumed to be community property).

Prior to the marriage, Martin sold the 34th Street property to a third party who then assumed the mortgage payments. During the marriage, the third-party defaulted on the mortgage and returned the property to Martin. When the property was returned in April 1987, the principal balance on the mortgage note was $361,905 and the accrued interest was $294,659. Martin's last payment made on the note before the divorce was in January 1993. At that time, the principal balance on the note was $149,720 and the accrued interest was $454,556. Thus, the amount of principal and interest paid was $212,185 and $159,897, respectively, or a total of $372,082. Martin used the income from Texas Sign to pay both separate and commu-

nity property debts and obligations, including the principal and interest on the purchase money note for the 34th Street property. The trial court awarded Zieba $30,657 as her one-half of the reimbursement for the community funds spent on Martin's separate purchase money indebtedness.

■ Zieba contends the trial court erred in failing to find Martin's payments for the purchase money indebtedness on his separate property was $394,525, including principal and interest (requested additional finding of fact 25) and in refusing to reimburse the community for that amount (requested additional conclusion of law 1).[4] The advancement of funds by one marital estate to another for payment of a purchase money debt or for a capital improvement are essentially identical and therefore, subject to the same kind of measurement. *Penick,* 783 S.W.2d at 197. The enhancement value is the measure of reimbursement in both situations. *Gutierrez,* 791 S.W.2d at 663. That is, the trier of fact should consider the benefits and detriments to each estate. *Id.* The trial court may not simply return to the contributing estate the actual amount advanced to reduce the principal indebtedness on the benefitted estate's property without regard to the benefits received in return by the contributing estate. *Id.*

The amount of principal and interest paid on the mortgage of the 34th Street property by the community business is essentially uncontroverted. However, it is also uncontroverted the community business benefitted by the use of the land. Although it is not entirely clear how the trial court determined the reimbursement amount, the court reasonably concluded there was some offsetting benefit to the community. As the party seeking reversal of the judgment based on her reimbursement claim, Zieba has the burden to prove what that benefit was. *See id.* at 665. Zieba has failed to carry that burden. Accordingly, we cannot say that the trial court's refusal to reimburse the community for the full principal and interest paid on the purchase money note for Martin's sepa-

rate estate was unsupported by the evidence and an abuse of discretion. Points of error three and four are overruled.

**B. Improvements**

■ In points of error five and six, Zieba contends the trial court abused its discretion in awarding her only $70,000 as reimbursement to the community for the enhanced value of improvements made to Martin's separate property ranch. As confirmed in the judgment, Martin owns as his separate property nearly 200 acres in Waller County, known as "the Ranch." The couple lived on this property during their marriage. During that time, Zieba and Martin lived in a 5000 square-foot house located on 2 acres of the tract. Renovations and improvements to the house and the surrounding property during the marriage were paid by the community through Texas Sign.

Zieba contends the trial court erred in failing to find the improvements to the Ranch enhanced its value by $189,000 (requested additional finding of fact 26) and refusing to reimburse the community in that amount (requested additional conclusion of law 2) because the uncontroverted testimony of her expert established that the improvements to Martin's ranch enhanced its value by $189,000. As we noted earlier, a claim for reimbursement for funds expended by an estate for improvements to another estate is measured by the enhancement value to the benefited estate. *Penick,* 783 S.W.2d at 197; *Anderson v. Gilliland,* 684 S.W.2d 673, 675 (Tex.1985). Zieba's expert, Frank Dyer, appraised the enhanced value of the Ranch as a result of the improvements at $189,000 and testified as to the basis of his opinion. While Martin's expert, John Hunt, merely appraised the overall value of the Ranch with improvements, he testified that the improvements did not enhance the value of the Ranch and disagreed with the costs of certain improvements stated by Dyer.

Because it awarded Zieba only $70,000 for her share of the community reimbursement, the trial court may not have been entirely

---

**4.** This figure differs from the one previously mentioned; however, Zieba does not explain how she arrived at this figure.

convinced by either expert's testimony and concluded the community was entitled to partial, not total, reimbursement for the enhanced value of Martin's separate property Ranch. Further, the evidence shows the couple benefited from these improvements insofar as they lived on the Ranch during their marriage. Again, while it is not clear how the trial court determined the reimbursement amount, the trial court reasonably could have concluded that this benefit to the community offset the community's expenditures on the improvements to Martin's separate property. Zieba has not shown the extent, if any, of that benefit to the community, which was her burden to do. *See Penick*, 783 S.W.2d at 197; *see also Gutierrez*, 791 S.W.2d at 665. Therefore, we are unable to conclude that the trial court's refusal to reimburse the community the full $189,000 for the improvements to the Ranch was unsupported by the evidence and an abuse of discretion. Points of error five and six are overruled.

### C. Separate Debts and Obligations, Cash Withdrawal, and Certificates of Deposit

In points of error seven and eight, Zieba contends the trial court erred in refusing to reimburse the community for: (1) approximately $200,000 in community funds spent by Martin to pay separate debts and obligations arising from his prior marriage and certain personal items; (2) a $100,000 cash withdrawal from the corporate bank account; and (3) two $92,000 CDs, one in Martin's own name and the other in his name "as trustee" for their daughter.

The trial court found that Martin spent approximately $200,000 in community funds to pay separate debts and obligations arising from his prior marriage and certain personal items (requested additional findings of fact 29 and 30). The expenditures relating to Martin's prior marriage totalled $147,517 and included child support payments, college expenses, medical expenses, settlement payments to his ex-wife, and attorney's fees incurred in a modification proceeding. Martin's personal expenditures totalled $57,610 and included face care products for a busi-

ness venture, travel expenses on vacations with his girlfriend, jewelry, rent on an apartment for his girlfriend, and rent on a Houston apartment. The trial court did not reimburse the community for these expenditures, the cash withdrawal or the CDs. Zieba contends Martin failed to properly account for any of these funds and that the community should have been reimbursed.

A fiduciary duty exists between a husband and a wife as to the community property controlled by each spouse. *In re Marriage of Moore*, 890 S.W.2d 821, 827 (Tex.App.—Amarillo 1994, no writ). The breach of a legal or equitable duty which violates this fiduciary relationship existing between spouses is termed "fraud on the community," a judicially created concept based on the theory of constructive fraud. *Id.* Any such conduct in the marital relationship is termed fraud on the community because, although not actually fraudulent, it has all the consequences and legal effects of actual fraud in that such conduct tends to deceive the other spouse or violate confidences that exist as a result of the marriage. *Id.*

A presumption of constructive fraud arises where one spouse disposes of the other spouse's one-half interest in community property without the other's knowledge or consent. *Jackson v. Smith*, 703 S.W.2d 791, 795 (Tex.App.—Dallas 1985, no writ). In that circumstance, the burden of proof to show fairness in disposing of community assets is upon the disposing spouse. *See Morrison v. Morrison*, 713 S.W.2d 377, 379 (Tex.App.—Dallas 1986, writ dism'd); *see also Horlock v. Horlock*, 533 S.W.2d 52, 55 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ dism'd w.o.j.). In considering a claim of constructive fraud, the court may consider three factors: (1) the size of the gift in relation to the total size of the community estate; (2) the adequacy of the remaining estate; and (3) the relationship of the donor to the donee. *Horlock*, 533 S.W.2d at 55.

In this case, the trial court found Martin owed a fiduciary duty to Zieba and to the community estate but failed to find Martin breached that duty by not properly accounting for the withdrawal of community funds, wasting community funds or spending com-

munity funds without Zieba's knowledge or consent (requested additional findings of fact 28, 31–35). Accordingly, the court refused to reimburse the community for Martin's payment of separate debts, waste of community assets, withdrawal of unaccounted for funds or violation of a fiduciary duty (requested additional conclusions of law 3–7).

■■■■■ We find no fault with the trial court's refusal to reimburse the community for the $147,517 in community funds spent by Martin on obligations arising from his prior marriage. These obligations were imposed on Martin by court order. However, the trial court did abuse its discretion by refusing to reimburse the community for the other expenditures and withdrawals. Specifically, the evidence conclusively establishes that Zieba did not know about or consent to the deposit of any community funds in CDs in Martin's name or the expenditure of community funds on Martin's paramours. As for the $100,000 cash withdrawal from the corporation's checking account, Zieba admitted she knew about this withdrawal. However, there is no evidence Zieba consented to the withdrawal other than her testimony that she did not question Martin about it. This amounts to "no more than a scintilla" and is "no evidence" of Zieba's consent to the expenditure of these funds. *See generally Kindred v. Con/Chem,* 650 S.W.2d 61, 63 (Tex.1983) ("when evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and in legal effect, no evidence").

More importantly, the evidence conclusively establishes that Martin failed to account for these funds or the CD funds at the time of divorce. At first, Martin denied any knowledge of the $100,000 withdrawal. Later, he explained he used the $100,000 and another $90,000 withdrawal from the corporate checking account to create the two CDs in April 1990. Martin claims the CD funds were then re-deposited in the corporate account two months later. There is no record of the $90,000 withdrawal or of the re-deposits in the bank statements produced by Martin. Although later bank statements did show that $180,357.75 was deposited in June

1990, there is no evidence regarding the nature of this deposit, i.e., whether it consisted of CD funds or the $100,000. Moreover, this deposit was after Zieba and Martin were separated, there was no accounting of these community funds after the separation, and the court apparently did not include these funds in the division of the marital estate.

As for the $57,610 in community funds spent on his paramours, Martin made little or no attempt at trial to explain or justify those expenses. Thus, the trial court should have reimbursed community for these expenditures. Likewise, Martin's failure to account for the $100,000 withdrawal or the two $92,000 CDs at the time of the divorce establishes that the trial court should also have reimbursed the community for these funds. Because the cash withdrawal, the CDs, and the money spent on paramours were unaccounted for and represent a significant portion of the value of the community estate as represented by Martin, we conclude the trial court should have reimbursed the community for these funds and its failure to do so based on the uncontroverted evidence constitutes an abuse of discretion. Points of error seven and eight are sustained.

## IV. OTHER FACTORS

■■■■■ Points of error one and two complain generally about the trial court's division of property. In complaining of the trial court's division of the property, one must be able to demonstrate from the record that the division is so unjust and unfair as to constitute an abuse of discretion. *Welch v. Welch,* 694 S.W.2d 374, 376 (Tex.App.—Houston [14th Dist.] 1985, no writ). While it is not required that the property be divided equally, the trial court must divide the estate in an equitable manner. *Id.* The trial court's discretion is not unlimited and there must be some reasonable basis for an unequal division of the property. *Id.* In making the division, the trial court may consider a myriad of factors, including but not limited to:

(1) fault in the breakup of the marriage; (2) disparity of incomes or of earning capacities; (3) benefits the innocent spouse would have received from the continuation of the marriage; (4) business opportuni-

ties, education and training; (5) relative physical conditions and disparity of ages; (6) relative financial conditions and obligations; (7) size of the respective estates and the nature of the property; (8) custody of the children; (9) excessive community property gifts to others or waste of community assets; (10) tax consequences. *See Baccus v. Baccus*, 808 S.W.2d 694, 700 (Tex.App.—Beaumont 1991, no writ).

 Every reasonable presumption should be resolved in favor of the proper exercise of discretion by the trial court in dividing the property of the parties. *Welch*, 694 S.W.2d at 376. Zieba argues that, using Martin's property values, the trial court's division gave 35% of the marital estate to her, and 65% to Martin, which was an abuse of discretion. She argues she should have received a proportionately higher portion of the community estate than Martin or at least, 50% of the community estate because (1) the community estate was not fully reimbursed for community funds spent on Martin's separate estate, and (2) many of the above factors weight in her favor. We agree.

First, taking Martin's evidence of value as true, the net value of Martin's separate estate is roughly three times greater than Zieba's. Second, Zieba's earning capacity and business opportunities as a flight attendant making $33,600 a year are limited as compared to Martin's yearly earnings in excess of $55,000 a year and substantial business assets. Third, Zieba is the sole managing conservator of their child. Finally, Zieba's testimony regarding three years of physical and verbal abuse and evidence of Martin's infidelity is uncontroverted. Although these factors suggest a property division in Zieba's favor, the trial court granted an unequal division heavily in Martin's favor. Given these factors and the court's error on Zieba's

reimbursement claim, we hold the trial court's unequal division of property in favor of Martin was so unjust and unfair as to constitute an abuse of discretion. Therefore, points of error one and two are also sustained.

## V. ATTORNEY'S FEES

 In point of error nine, Zieba contends the trial court erred in awarding her only $10,000 in attorney's fees after specifically finding that she incurred $20,000 in attorney's fees. We agree. In finding and conclusion 18, the trial court found "that as a further division of the property [Martin] shall pay $10,000 of the approximate $45,000 expended by [Zieba] as reasonable and necessary attorney's fees." However, in requested additional conclusion of law 8, the court also found "the award of attorney's fees ... of $20,000 was a reasonable and necessary fee for services rendered by [Zieba's attorney] ... and the same was a just, fair and equitable allocation of the community estate...." When the trial court's findings appear to conflict, they will be reconciled whenever possible. *Yates Ford, Inc. v. Benavides*, 684 S.W.2d 736, 739 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). However, when not reconcilable, the findings cannot support the judgment. *Id.* We hold that finding and conclusion 18 and requested additional conclusion of law 8 are irreconcilable and therefore cannot support the judgment.[5] Point of error nine is sustained.

Accordingly, we reverse the portion of the judgment below dividing the marital estate and awarding attorney's fees and remand to the trial court for redivision of the marital estate and reconsideration of attorney's fees "without conducting a new evidentiary hear-

---

5. Zieba also suggests a conflict between these findings, requested additional finding of fact 39, and the judgment. In requested additional finding of fact 39, the court found Zieba incurred certain attorney's fees because of Martin's obstinate conduct during this litigation. This finding is merely evidentiary and therefore does not conflict with the court's findings on the ultimate question of the reasonable and necessary attorney's fees expended by Zieba in this case. *See Yates Ford*, 684 S.W.2d at 739; *First Fin. Devlop.*

*v. Hughston*, 797 S.W.2d 286, 290 (Tex.App.— Corpus Christi 1990, writ denied). Similarly, there is no conflict between the judgment and the court's findings and conclusions because those findings and conclusions were filed after the judgment and therefore control. *See Cole v. Cole*, 880 S.W.2d 477, 483 (Tex.App.—Fort Worth 1994, no writ); *Southwest Craft Center v. Heilner*, 670 S.W.2d 651, 655 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.).

ing or taking any new evidence." *See Jacobs v. Jacobs,* 687 S.W.2d 731, 733 (Tex.1985) (holding that "once reversible error affecting the 'just and right' division of the community estate is found, the court of appeals must remand the entire community estate for a new division"); *see also Siefkas v. Siefkas,* 902 S.W.2d 72, 80 (Tex.App.—El Paso 1995, no writ).