NUMBER 13-01-00580-CV

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI

 

 



GERALD LEE ORTON,                                                            Appellant,

 

                                                   v.

 

PAMELA FAYE ORTON,                                                          Appellee.

 



 

                        On appeal from the 359th District Court

                              of Montgomery
County, Texas.

 

 



                                   O P I N I O N

 

                     Before Justices
Hinojosa, Yañez, and Castillo

                                  Opinion by
Justice Castillo

 








This is an appeal from a property division in a post-answer
default divorce decree.  Appellant, Gerald
Lee Orton, raises two issues for our review: (1) whether the decree reflects
the trial court=s ruling and
whether the evidence is legally sufficient to support the property division;
and (2) whether the trial court erred in refusing to set aside the default
judgement and grant a new trial.[1]  We affirm in part, and reverse and remand in
part.

BACKGROUND








Pamela and Gerald Orton were married on August 3, 1996, and
ceased living together on or about March 10, 2000.  No children were born of the marriage.   Pamela filed the divorce petition alleging
as grounds therefor insupportability and cruelty.  In the petition, she alleged she was entitled
to a disproportionate share of the community estate.  Gerald was served with citation, filed an answer,
and a counter-claim for divorce. 
Initially represented by counsel, Gerald ultimately represented himself
upon the withdrawal, with court approval, of his attorney on December 7, 2000.   On March 23, 2001, the trial court sent
notice that the final hearing date was set for non-jury trial on May 17,
2001.  Prior to the time of the hearing,
appellant retained counsel but counsel did not make an appearance in the case
prior to May 17, 2001.  A bench trial was
held[2]
whereupon the trial court pronounced judgment awarding Pamela sixty percent of
the community part of Gerald=s retirement
account and ordering Gerald to pay the outstanding community debt.  Neither Gerald nor his attorney appeared for
the final hearing.  The day after the
hearing, Gerald, through counsel, filed a motion to set aside default judgment
seeking a new trial.  Following a hearing,
the trial court denied his motion.  This
appeal ensued.

SUFFICIENCY OF THE EVIDENCE

In the first issue presented, Gerald asserts that the decree as
drafted and signed was not what the court ordered and there is no evidence to
support the decree.  In particular,
Gerald=s complaint
involves the division of: (1) the retirement account; and, (2) the debts.  No findings of fact or conclusions of law
were properly requested or filed in this case and so we must therefore presume
the trial court made all necessary findings to support its judgment if there is
any probative evidence in the record to support such judgment.  Allen v. Allen, 717 S.W.2d 311, 313
(Tex. 1986).  We must affirm such
judgment if it can be sustained on any legal theory that finds support in the
record.  Id.

Standard of Review








In a decree of divorce or annulment, the court shall order a
division of the estate of the parties in a manner that the court deems just and
right, having due regard for the rights of each party.  Tex.
Fam. Code Ann. ' 7.001(Vernon
1998).  The court shall also determine
the right of both spouses in a retirement plan. 
Tex. Fam. Code Ann. '7.003 (Vernon
1998).  In a divorce proceeding, a trial
court has wide latitude in the exercise of its discretion in dividing marital
property and thus that division should only be corrected on appeal when an
abuse of discretion is proven.  Zieba
v. Martin, 928 S.W.2d 782, 790 (Tex. App.BHouston [14th Dist.] 1996, no writ); Dankowski
v. Dankowski, 922 S.W.2d 298, 304 (Tex. App.BFort Worth 1996, no writ).   Under this standard, legal sufficiency is
not an independent issue on appeal but merely a relevant factor to be
considered in determining whether the trial court has abused its
discretion.   Zieba, 928 S.W.2d at
786.  The party complaining of the
division must be able to demonstrate from the record that the division was so
unfair and unjust as to constitute an abuse of discretion.  Id. at 790.  We must indulge every reasonable presumption
in favor of the trial court=s proper
exercise of its discretion.  Vannerson
v. Vannerson, 857 S.W.2d 659, 669 (Tex. App.BHouston [1st Dist.] 1993, writ
denied).  Yet the trial court does not
have unlimited discretion in dividing property; there must be some reasonable
basis for an unequal division of the property.   Zieba, 928 S.W.2d at 790.  Where there has been an abuse of discretion,
though, the appellate court may not substitute its judgment for the trial court=s division of
property; rather, remand is required. 
Jacobs v. Jacobs, 687 S.W.2d 731, 732 (Tex. 1985); McKnight v.
McKnight, 543 S.W.2d 863, 866 (Tex. 1976).  Moreover, the reviewing court must not limit
the remand to particular aspects of the division; rather, the entire community
estate must be remanded for a new division. 
Jacobs, 687 S.W.2d at 733.      

The Retirement Account








Gerald asserts that the trial court did not have the evidence
to find that sixty percent of his retirement account was community property,
since the evidence showed that he was not married during the entire time he
participated in the retirement plan. 
Particular to this issue, Pamela testified that Gerald had a retirement
account through his employment with the State. 
She testified that the two were married in 1996 and that he had worked
with the State  agency for about ten
years.  Her counsel stated, AWe=re asking for
an unequal distribution of this only asset.@ 
Whereupon the trial court asked if Gerald had been married to Pamela Athe entire ten
years he worked for the State and counsel replied ANo.@  Thereafter, the following discourse occurred:

THE COURT: Was
he married to Pamela during the entire ten years he worked for the State?

 

MS. WARREN: No,
sir.  He was B

 

THE COURT: Why
is she entitled to 50 or 60 percent?  You=ve already done
the mathematics.

 

MS.  WARREN: Of only the community part of it, not
the entire, the entire part, Your Honor.

 

THE COURT: Why
would you say he=s [sic]
entitled to the, .60 the unequal distribution?

 

MS. WARREN:
Well, I think in part B

 

THE COURT: In
terms of your allegations that you list?

 

MS.  WARREN: We have alleged cruel physical and
mental treatment.  

 

THE COURT: I
want to know as what fault have you alleged.

 

The
trial court then received evidence regarding the cruel treatment alleged.   








The trial court pronounced judgment stating, AI will adopt
the Petitioner=s position with
regard to the .60 to be multiplied toward the community property benefit
participation in the Texas State Retirement benefits.@  The trial court later stated,@ I=ll go with your
position on the QDRO,[3]
60 percent of the part when they were married.@  
Counsel then advised Pamela, AThat means the
Court is awarding you $137.00 upon B from his
annuity, and his annuity is about 560, so he=s getting like 430 something.@  Later, Pamela asked, AThat means I=m going to get
the retirement?@  And the trial court answered, AWhen it comes
to fruition.@  

According to the QDRO the trial court signed, the beginning
date is fixed at the parties= date of
marriage:

4.  As a part of a just and right division of the
estate of the parties, Alternate Payee[4]
is hereby awarded a portion of any benefits payable with respect to Participant
which Participant, or Participant=s designated beneficiary,
surviving spouse, or estate may become entitled to receive from the Plan, by
way of a return of accumulated contributions or by way of any annuity that may
become payable as a result of Participant=s participation
in the Plan, such portion to be determined by:

 

multiplying sixty percent (60%) by a fraction, the numerator of
which is the amount of credited service with the Plan earned by Participant
between August 3, 1996, and the date the divorce was granted, and the
denominator of which is the amount of credited service by Participant under the
Plan on the date the divorce was granted, and then multiplying that product by
the value of the benefit that would be payable to Participant or Participant=s designated
beneficiary, surviving spouse, or estate by the Plan, as if the Participant
were eligible to receive such benefit on the date the divorce was granted.








We hold that the trial court=s judgment as entered reflects disposition
of the community part of the retirement account and excludes retirement
contributions made outside the duration of the marriage.  The record does not show that the trial court
found that sixty percent of the retirement account was community property;
rather, the trial court awarded an unequal distribution of the community part
of the retirement account.  The QDRO also
complies with the trial court=s oral pronouncement
of the division of the retirement.    








Pamela alleged cruelty and, when asked by the trial court as to
the allegation of fault, testified that he treated her like she was nothing,
constantly Aputting her
down.@  She added that he Agot into@ pornography
when she was in nursing school and had relations with her once in the four
years of their marriage.[5]  In a default case, the petitioner must still
prove the grounds for the divorce.  Considine
v. Considine, 726 S.W.2d 253, 254 (Tex. App.BAustin 1987, no writ).  The court may grant a divorce in favor of one
spouse if the other spouse is guilty of cruel treatment toward the complaining
spouse of a nature that renders further living together insupportable.  Tex.
Fam. Code Ann. ' 6.002  (Vernon 1998).   We hold that the trial court had sufficient
evidence before it to find fault and enter an uneven distribution of the
retirement account.  See Young v.
Young, 609 S.W.2d 758, 761 (Tex. 1980) (fault in breakup of marriage may be
considered in division).  Once again we
note that a trial court has broad discretion to divide community property to
arrive at a just and right allocation thereof. 
Dankowski, 922 S.W.2d at 304; see also Vannerson,
857 S.W.2d at 668  (even in default
decree, court has discretion to make unequal distribution).  Consequently, this Court will disturb the
trial court's property division only if it abuses its discretion.  Vannerson, 857 S.W.2d at 668.  We find that the trial court in the present
case did not abuse its discretion in the division of the retirement account.[6]


The  Debt 

In his second complaint under his first issue, Gerald asserts
that the divorce decree required that he pay a debt that the trial court did
not order him to pay.  Essentially, he
argues that there is a variance between the proof at trial and the judgment
entered and there is no evidence regarding the Alarge amount of credit card debt@ he was ordered
to pay.  He adds that the only mention of
the debt in the record is the exhibit containing the parties= debt
management agreement.  He argues that the
exhibit does not mention the six creditors identified in the decree. 








At the hearing, Pamela introduced into evidence the parties= debt
management agreement with Consumer Credit Counseling Service, whereby the
agency would help them repay their debts and help creditors collect the money
owed them.  Nowhere in the agreement are
creditors identified or total amounts due. 
When asked by counsel

whether
Gerald retained all of the personal property associated with the debt
management agreement, Pamela responded, AYes.@  The following colloquy ensued:

Q.  (BY MS. WARREN): Do you ask the Court to
order him to pay that payment?

 

A.  Yes.

THE COURT: Tell me what that means.

MS. WARREN: It
mean=s he=s got all of
the stuff, she doesn=t have any of
the stuff, that=s the debt
associated with it, that=s the debt
associated with it and we ask he paid B 

 

          THE
COURT: Admitted.  

At
the time the trial court pronounced judgment, no reference to the community
debt was made; rather, the trial court pronounced an award of Athe property of
the marriage to the party in possession thereof.@   








The final decree orders Gerald to pay as part of the division
of the estate, the Abalance due,
including principal, interest, and all other charges, on the obligation payable
to Consumer Credit Counseling Service of Gulf Coast Area, I, Houston, Texas
given as satisfaction of the creditors and the amounts owed to them as
specified in Exhibit A attached hereto and incorporated herein for all purposes.@  Exhibit A lists seven creditors and a debt
balance of $21,688.83.[7]  

The sole evidence before the trial court established the existence of
a community debt involving a monthly payment in the amount of $422.00 to Amy creditors@  beginning on June 15, 1998.  The decree connects the debt management
agreement with Exhibit A, attached to and incorporated into the decree.  Exhibit A lists the
seven creditors and the amounts owed to each with the total of $21,688.83 as
the balance.  This was not before the
trial court.  There was no evidence
at the hearing regarding debt in the amount of $21,688.83.  No specific creditor was identified  and no specific debt total was ever
mentioned.  No evidence exists to prove
that payments made under the debt management agreement are to be applied to the
$21,688.83 debt.  Appellee filed an
Amended Inventory and Appraisement which is  
before us.  In it, under the
section regarding liabilities and accounts payable, we find ASee Financial
Information Sheet,@ which is not
before us.








We acknowledge that the trial court retains plenary power over
the judgment and is free to modify the pronouncement until the judge signs the
final decree.  Cook v. Cook, 888
S.W.2d 130,131-32 (Tex. App.BCorpus Christi
1994, no writ).  An oral judgment is
often tentative and may not cover every detail of the final decree.  Id. 
Accordingly, the trial court did not err in making a disposition of the
debt in the judgment although no pronouncement of its decision regarding
allocation of debt was made at the hearing.  Id.








However, appellant complains that there was no evidence
regarding the large amount of debt he was ordered to pay.  A Ano evidence@ standard of review is
applied when the party not bearing the burden of proof at trial challenges a
finding of fact by arguing that the evidence is legally insufficient to support
the finding.  Hickley v. Couchman,
797 S.W.2d 103, 109 (Tex. App.BCorpus Christi 1990,
writ denied).  A legal sufficiency point
may only be sustained when the evidence conclusively establishes the absence of
a vital fact, the record discloses no more than a mere scintilla of evidence to
prove a vital fact, the court is bound by rules of law or evidence from giving
weight to the only evidence offered to prove a vital fact, or the evidence
established conclusively the opposite of the vital fact.  Hines v. Comm=n for Lawyer
Discipline, 28 S.W.3d 697, 701 (Tex. App.BCorpus Christi 2000,
no pet.).   We review the legal sufficiency challenge by
viewing the evidence in a light that tends to support the disputed fact and
must disregard all evidence and inference to the contrary.  Bradford v. Vento, 48 S.W.3d 749, 754
(Tex. 2001).[8]   If
there is more than a scintilla of evidence to support the questioned fact, the Ano evidence@  point fails. 
Formosa
Plastics v. Presidio Eng=rs, 960 S.W.2d 41, 48
(Tex. 1998).  We have reviewed the record and find no
evidence proving (1) the debts appellant was ordered to pay and (2) the debts
were in fact community debts.  Ordering
appellant to pay particular debts to specific creditors in specific amounts in
the absence of any evidence as to those particular debts, creditors, or amounts
is an abuse of discretion.[9]  See Mata v. Mata, 710 S.W.2d 756, 760
(Tex. App.BCorpus Christi
1986, no writ)(a division based on values not in evidence was an abuse of
discretion).  Because there is no evidence to support the
division of the debt, we find that the trial court abused its discretion and so
sustain appellant=s first issue.  Accordingly, we find this cause should be remanded for a new
division of the entire community estate. 
Jacobs, 687 S.W.2d at 733.

REMAINING ISSUE

By his second issue presented, appellant complains that the trial
court erred in denying his motion to set aside default judgment pursuant to Craddock
v. Sunshine Bus Lines, Inc., 134 Tex. 388, 133 S.W.2d 124 (1939),  because the trial court: (1) awarded him
credit card debt that was in appellee=s name which was
acquired before the marriage; and, (2) awarded to appellee his separate
property. 








 As we are already remanding
this cause to the trial court for a new division of property, which is the only
issue of which appellant complains in this appeal and for which he claimed a
meritorious defense, we need not, and do not, address appellant=s second issue.   Tex.
R. App. P. 47.1.

CONCLUSION

Because neither spouse has challenged or otherwise complained
of the dissolution of the marriage, we affirm the judgment to the extent that
it grants a divorce.  Mata, 710
S.W.2d at 760.   We reverse the judgment
of the trial court as to the division of property and remand this cause for a
new division of the entire community estate. 
Id.;  Jacobs, 687
S.W.2d at 733.                                                  

ERRLINDA
CASTILLO,

Justice

 

Do not
publish.

Tex.
R. App. P.
47.3(b).

 

Opinion delivered and
filed

this 3rd day of
October, 2002.

 











[1]
Appellant=s second point
actually reads, AWhether the
court erred in granting the Motion for New Trial.@  We read this as a challenge to the trial
court=s denial of
appellant=s motion to set
aside default judgment.





[2]
Pamela introduced records pertaining to Gerald=s
retirement and the parties=
debt management agreement.   





[3]
Qualified Domestic Relations Order. 
See generally Tex. Fam. Code
Ann. '' 9.101, 9.102,
9.104, and 9.105 (Vernon 1998).  





[4]
The QDRO identifies Pamela as the Alternate Payee and Gerald as the Payee.





[5]
If the husband or wife testifies, the court or jury trying the case shall
determine the credibility of the witness and the weight to be given the witness=s
testimony.  Tex. Fam. Code Ann. '6.704(b)
(Vernon 1998).  





[6]
Appellee provides us the formula presented to the trial court and included in
the QDRO.  We note that the formulas for
apportioning retirement benefits differ depending on whether the value of the
pension plan is at issue.   See May
v. May, 716 S.W.2d 705, 710 (Tex.App.BCorpus
Christi 1986, no writ) (explaining when each formula should be used).  The formula used when the value of the pension
plan is not in issue was set out in Taggart v. Taggart, 552 S.W.2d 422,
424 (Tex.1977) as follows:

 

 1   
x    # years of service while    x  
value of accrued   =   non‑employee

                   married                          benefit

‑‑‑‑     ‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑‑

 2         
# years of service at              
at date of                
spouse's share

                  retirement                        retirement                       

 

This formula is called the Taggart formula.  The decree essentially changes the fraction
in the formula to reflect 60% rather than the 50% or 2
as designated in the formula above. 
Appellant does not contest the value of the retirement plan; rather, he
challenges the numerator representing the number of years of service while
married, believing that the trial court ordered that portion to be equal to
the denominator representing the number of years of service at retirement.   





[7]
The creditors are identified as Montgomery Ward, Sears Roebuck, Associates Card
Services, Citibank, Peoples Bank, First North American, and Nations Bank.





[8]
In Formosa Plastics, the supreme court set out a slightly different
formulation of the standard of review for the evidence in a legal sufficiency
challenge, holding that a proper sufficiency review is conducted by considering
all the record evidence in the light most favorable to the prevailing party,
indulging every reasonable inference in that party=s
favor.  Formosa Plastics vs. Presidio
Eng=rs, 960
S.W.2d 41, 48 (Tex. 1998). 
Despite its holding in Bradford v. Vento, 48
S.W.3d 749, 754 (Tex. 2001) as noted above, the
Supreme Court has not overruled Formosa Plastics nor explicitly
abandoned the Formosa Plastics=
formulation of the review of Aall
the record evidence@ as a proper
standard for a legal sufficiency review. 
However, the supreme court has recently signaled a definite preference
for the Bradford enunciation of the proper standard of analysis, stating
that AWe emphasize,
however, that under a legal-sufficiency review, we must disregard all evidence
and inferences contrary to the jury=s
finding.@ Lenz v.
Lenz, 79 S.W.3d 10, 19 (Tex. 2002)(citing to Bradford, 48 S.W.3d at
754).





[9]
We note that Pamela testified that Gerald was in possession of the property
associated with the debt.  The trial
court awarded the property to the party in possession.  The debt proved up was a monthly payment
which is not reflected in the decree.  We
also note that the decree requires Pamela to pay AAny
and all debts, charges, liabilities, and other obligations incurred solely by
the husband from and after March 10, 2000, unless express provision is
made in this decree to the contrary.@  We know not from this record whether the
creditors identified in the decree are within this category.