Motion for Rehearing Overruled, Opinion of May 23, 2002 Withdrawn,
Affirmed and Majority and Dissenting Opinions on Rehearing 









Motion for Rehearing Overruled, Opinion of May 23,
2002 Withdrawn, Affirmed and Majority and Dissenting Opinions on Rehearing
issued August 19, 2003.

                                                                                                                                                            

In The

 

Fourteenth Court of Appeals

____________

 

14-99-01044-CV

 

____________

 

LORI ZAGORSKI, Appellant

 

V.

 

ANTHONY ZAGORSKI, Appellee

 



 

On
Appeal from the 246th District Court

Harris County, Texas

Trial
Court Cause No. 97-43081

 



 

M A J O R I T Y   O P I
N I O N   O N   R E H E A R I N G

The opinion of May 23, 2002 is withdrawn, the following is
substituted in its place and appellant=s motion for rehearing is overruled.








This is an appeal from the property division in a divorce
case.  Lori Zagorski and Anthony Zagorski
were married on December 30, 1993.  No
children were born or adopted during the marriage.  Lori petitioned for divorce on August 18,
1997, and Tony counterclaimed.[1]  After a nine day bench trial, the trial court
entered a divorce decree and filed findings of fact and conclusions of law. In
three issues on appeal, Lori complains (1) there is insufficient evidence to
support the trial court=s finding that the money Tony received during the marriage
from a foreign bank account was his separate property; (2) the trial court=s erroneous characterization of the
money Tony received from the foreign bank account resulted in an unfair and
unjust division of property; and (3) the trial court erred in evaluating Lori=s claim for reimbursement.  We affirm.

I.

Standards of
Review

The trial court has broad discretion in dividing the marital
estate at divorce.  Murff v. Murff,
615 S.W.2d 696, 698 (Tex. 1981).  Upon
appeal, we presume the trial court properly used its discretion, and will
reverse the cause only where the trial court clearly abused that discretion,
and only if the error materially affects the court=s just and right division of the
property.  Id.; Jacobs v.
Jacobs, 687 S.W.2d 731, 732B33 (Tex. 1985).  The
test for abuse of discretion is whether the court acted without reference to
any guiding rules or principles; the appropriate inquiry is whether the trial
court=s ruling was arbitrary or
unreasonable.  Worford v. Stamper,
801 S.W.2d 108, 109 (Tex. 1990).  We may
not substitute our judgment for the trial court=s judgment unless the trial court=s action was so arbitrary that it
exceeded the bounds of reasonable discretion. 
Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002).  Under an abuse of discretion standard, legal
and factual sufficiency challenges are not independent reversible grounds of
error but are relevant factors in assessing whether the trial court abused its
discretion.  Beaumont Bank, N.A. v.
Buller, 806 S.W.2d 223, 226 (Tex. 1991).








In her first issue, Lori challenges the legal and factual
sufficiency of the evidence to support one of the trial court=s findings of fact, and two of its
conclusions of law.  Findings of fact in
a bench trial have the same force and dignity as a jury verdict; an appellate
court reviews sufficiency challenges to findings of fact by the same standards
we apply in reviewing a jury=s findings.  Ortiz
v. Jones, 917 S.W.2d 770, 772 (Tex. 1996).

Property
possessed by either spouse on dissolution of the marriage is presumed to be
community property, and to overcome this presumption, a party must establish by
clear and convincing evidence that the disputed property is separate
property.  Tex. Fam. Code Ann. ' 3.003 (Vernon 1998).  When the burden of proof at trial is by clear
and convincing evidence, we apply a higher standard of legal and factual
sufficiency review.  In re: J.F.C.,
96 S.W.3d 256 (Tex. 2002); In re C.H., 89 S.W.3d 17 (Tex. 2002).  In a legal sufficiency review, we look at all
the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its
finding was true.  In re J.F.C.,
96 S.W.3d  at 265B66; In re C.H., 89 S.W.3d at
25B26. 
In a factual sufficiency review, we consider all of the evidence and must determine not
whether the trier of fact could reasonably conclude that the existence of a
fact is more probable than not, as in ordinary civil cases, but whether the
trier of fact could reasonably conclude that the existence of the fact is
highly probable.  In re the interests
of JFC, ABC and MBC, 96 S.W.3d 256 (Tex. 2003); In re C.H., 89
S.W.3d 17, 25 (Tex. 2002).

Even
applying this heightened standard of review, a factual sufficiency point
requires the appellate court to examine all of the evidence in determining
whether the finding in question is so against the great weight and
preponderance of the evidence as to be manifestly unjust.  Tate v. Tate, 55 S.W.3d 1, 5 (Tex. App.CEl Paso 2000, no pet.).








Conclusions
of law are reviewed de novo as legal questions.  Hitzelberger v. Samedan Oil Corp., 948
S.W.2d 497, 503 (Tex. App.CWaco 1997, writ denied). 
We review conclusions of law to determine whether the conclusions drawn
from the facts are correct.  Zieben v.
Platt, 786 S.W.2d 797, 802 (Tex. App.CHouston [14th Dist.] 1990, no
writ).  We will follow a trial court=s conclusions of law unless they are
erroneous as a matter of law.  Hitzelberger,
948 S.W.2d at 503.  Even an incorrect
conclusion of law will be followed if the controlling findings of fact support
a correct legal theory.  Id.  A trial court=s conclusions of law may not be
challenged for factual insufficiency.  Zieba
v. Martin, 928 S.W.2d 782, 786 n.3 (Tex. AppCHouston [14th Dist.] 1996, no
writ).  As a result, we will sustain the
first point of error, an insufficient evidence issue, only if the fact finder
could not have reasonably found the fact was established by clear and
convincing evidence.  Id.  To this end, we must first determine whether
the evidence was such that the trial judge could reasonably form a firm belief
or conviction about the truth of Tony=s claim that the funds in the foreign
bank account were his separate property, and second, whether the trial judge
could reasonably conclude that the fact that Tony had accumulated personal
savings of at least $2,057,524.20 prior to the date of the parties= marriage was highly probable. 

 

II.

Does The Evidence Support Characterizing The Funds in

The Darwin Ltd. Account as Tony=s Property?

 








In
her first issue, Lori argues the trial court erred in characterizing funds in
the Darwin Ltd. bank account (the AAccount@), and the mutations therefrom, as
Tony=s separate property.  Lori contends the evidence was legally and
factually insufficient to support both the trial court=s finding Tony had in excess of $2
million in the Account Aprior@ to the date he and Lori were married, and the concomitant
conclusion of law that assets purchased with those funds were also separate
property.[2]  The gravamen of Lori=s argument is that Tony failed to
establish the funds in the Account at the time of the marriage were his
funds, and therefore all assets purchased with those funds were community
property.  We address first the question
of whether Tony properly established the funds in the Account prior to his
marriage were his.

In
this first issue, Lori challenges only the following trial court finding and
conclusions:

Findings of Fact

******

7.         Prior
to the date of the parties= marriage, which was December 30, 1993, ANTHONY J.
ZAGORSKI had accumulated savings of at least $2,057,524.20.

 

Conclusions of Law

******

5.         The
amount of $2, 057,524.20 was the separate property of ANTHONY J. ZAGORSKI prior
to the marriage to LORI ZAGORSKI on December 30, 1993.

 

6.                 
Assets
purchased from the $2,057,524.20, and mutations therefrom, were traced by clear
and convincing evidence and are the separate property of ANTHONY J. ZAGORSKI.

Before
the Zagorski=s marriage, the funds in the Account
totaled over two million dollars.  During
the marriage, Tony made withdrawals from the Account.  The money was sent to him or, at his request,
directly to others.  A summary of the
telegraphic transfers from the Account introduced at trial shows that Darwin
Ltd. distributed a total of $2,057,524.20 to Tony during the time he and Lori
were married.[3]









Lori
makes two arguments that the Account disbursements were community
property.  First, their receipt during
the marriage represented community income. 
Second, the interest and res of the Account were so commingled
they defied tracing and segregation.  The
essence of her complaint is credibility. 
Specifically, she complains Tony=s inception of title evidence isn=t believable due to incomplete
documentation, inconsistent documents and biased testimony.  As evidence the Account was separate, Tony
submitted oral testimony and circumstantial documentary evidence.  His evidence traced the origin of funds in
the Account to the repayment of savings prior to their marriage.








Separate
property commands constitutional stature. 
AAll property, both real and personal,
of a spouse owned or claimed before marriage, and that acquired afterward by
gift, devise or descent, shall be the separate property of that spouse . . . . @ 
Tex. Const. art. XVI, ' 15. 
The Texas Family Code defines separate property as that property owned
by a spouse before marriage, acquired during the marriage by gift, devise, or
descent, and the recovery for personal injuries sustained during the
marriage.  Tex. Fam. Code Ann. ' 3.001 (Vernon 1998).  Community property consists of the property,
other than separate property, acquired by either spouse during marriage.  Id. ' 3.002.  In Texas, property possessed by either spouse
during or on dissolution of the marriage is presumed to be community property, absent
clear and convincing evidence to the contrary. 
Id. ' 3.003. 
The characterization of property as either community or separate is
determined by the inception of title to the property.  Smith v. Smith, 22 S.W.3d 140, 145 (Tex.
App.CHouston [14th Dist.] 2000, no
pet.).  Inception of title occurs when a
party first has a right of claim to the property by virtue of which title is
finally vested.  Id. (citing Strong
v. Garrett, 224 S.W.2d 471, 474 (Tex. 1949)).  The major consideration in determining the
characterization of property as community or separate is the intention of
spouses shown by the circumstances surrounding the inception of title.  Scott v. Estate of Scott, 973 S.W.2d
694, 695 (Tex. App.CEl Paso 1998, no pet.). 
The spouse claiming certain property as Aseparate@ must trace and clearly identify the
property claimed to be separate.  Smith,
22 S.W.3d at 144 (citing McElwee v. McElwee, 911 S.W.2d 182, 189 (Tex.
App.CHouston [1st Dist.] 1995, writ
denied)).  Tracing involves establishing
the separate origin of the property through evidence showing the time and means
by which the spouse originally obtained possession of the property.  Id. (citing Hilliard v. Hilliard,
725 S.W.2d 722, 723 (Tex. App.CDallas 1985, no writ)). 
If the evidence shows separate and community property have been so
commingled as to defy resegregation and identification, the burden is not
discharged and the statutory presumption prevails.  McKinley v. McKinley, 496 S.W.2d 540, 543
(Tex. 1973).  Mere testimony that
property was purchased with separate property funds, without any tracing of the
funds, is generally insufficient to rebut the community presumption.  McElwee, 911 S.W.2d at 188 (quoting Schmeltz
v. Garey, 49 Tex. 49, 60‑61 (Tex.1878)).  The degree of proof necessary to establish
that property is separate property is clear and convincing evidence.  Tex.
Fam. Code Ann. ' 3.003(b) (Vernon 1998). 


Tony
had the burden of establishing the funds in the Account prior to the date of
his marriage to Lori were his funds.  He
also had the burden of tracing the funds disbursed from that account into the
assets purchased with those funds in order to rebut the presumption the assets
were community property.

A.  Tony=s Inception of Title Evidence








To
support his position the Account was his separate property, Tony relies on the
inception of title rule.  The evidence
shows that before he married Lori, Tony placed substantial amounts of his
personal money with an Australian business associate, John Rundell, to
collateralize and/or guarantee overseas business ventures.  These funds were initially deposited into an
Australian account and subsequently transferred into an account in the name of
Darwin Ltd. at the Hong Kong Bank.  Tony
testified this money was a loan to facilitate Rilco Manufacturing Company (ARilco@), a separate property business, and
its subsidiaries to bid successfully for lucrative contracts.  Tony and John Rundell testified  the Account was established in 1988.  The Account money originated from the
repayment of the loan Tony made to Rilco Western Australia Pty. Ltd (Rilco
W.A.).  Specifically, the record reveals
that the funds in the Account originated when Tony personally loaned money to
Rilco W. A., which in turn loaned the money to its subsidiary, Rilco Process
Heat Pty. Ltd., in order to fund guarantees to perform a contract in
Australia.  Thereafter, the funds were
returned to Rilco W. A. which in turn deposited the funds into the Account
through Gordon Fisher, a Hong Kong solicitor. 
John Rundell, the manager of the Australian projects, and signatory on
the Account, testified Tony could, and did, request repayment of the
funds.  Tony introduced a series of letters
written by Tony to Rundell requesting telegraphic transfers of money from the
Account dated from July 21, 1993, to May 25, 1997.  He also introduced a series of letters
written by Rundell to Tony reporting annual reconciliations of the Account
dated from January 29, 1993, to February 12, 1997.  Lori contends Tony=s evidence regarding the original
source of the funds in the Account is simply not credible.  While it is true the evidence does not
include documents such as a trust agreement for the Account, a Rilco W.A. loan
agreement or copies of original wire transfers sending the money overseas, it
is not our role to question the absence of such documents.  Three witnesses corroborated Tony=s testimony regarding the existence
of the foreign bank account prior to the marriage and the source of the funds
in it.  Their testimony was bolstered by
documentation, the series of letters written by Tony to Rundell requesting
telegraphic transfers of money from the Account dated from July 21, 1993 to May
25, 1997, and the series of letters written by Rundell to Tony reporting annual
reconciliations of the Account dated from January 29, 1993, to February 12,
1997.  Moreover, there was documentary
evidence of the foreign transactions requiring funding guaranties.  Tony=s testimony  was corroborated, and even in the absence of
more specific documentary evidence of inception of title, it is clear and
convincing evidence that the Account was separate property prior to the
marriage.  Cf.  Robles v. 
Robles, 965 S.W.2d 605, 616 (Tex. App.CHouston [1st Dist.]  1998, writ denied) (uncorroborated
testimony of interested party does not conclusively establish a fact even when
uncontradicted).  













Moreover,
we do not evaluate the credibility of oral testimony given by Tony, Robert
Adams, CPA, Ken Zagorski, and John Rundell about the inception of title to the
Account.  This court is not permitted to
interfere with the fact finder=s resolution of conflicts in the evidence or to pass on the
weight or credibility of the witnesses= testimony.  Sprick v. Sprick, 25 S.W.3d 7, 13
(Tex. App.CEl Paso 1999, pet. denied); Puri
v. Mansukhani, 973 S.W.2d 701, 711 (Tex. App.CHouston [14th Dist.] 1998, no pet.).  The credibility of witnesses in a divorce
action, including the husband and wife, is solely under the purview of the
trial court, not an appellate court.   Bailey
v. Bailey, 295 S.W.2d 438, 439 (Tex. App.CAmarillo 1956, no writ).  We must rely upon the fact finder, here the
trial court, to make findings based upon the belief or disbelief of the
testimony before the court.  Carter v.
Carter, 736 S.W.2d 775, 779 (Tex. App.CHouston [14th Dist.] 1987, writ
denied).  If the judge found Tony and the
accountant=s testimony to be credible, he could
have reasonably formed a firm belief or conviction about the truth of Tony=s claim that the foreign bank account
was his separate property.  See In re
C.H., 89 S.W.3d at 25.   Lori=s legal sufficiency challenge
fails.     Lori
submitted evidence that the personal loans were not listed on Tony=s prior divorce decree as separate
property, Tony told the IRS that he had no personal interest in the Account,
and he didn=t pay taxes on the money.   Again, as previously pointed out, however,
the bulk of her argument focuses on Tony=s failure to introduce >more convincing= evidence such as a trust agreement,
a loan agreement, a wire transfer, net worth statement at the time of the
personal loans, corporate records of a loan received, and other documents that
represented the corporate deposits, guarantees, or retentions to reinforce the
direct and circumstantial evidence he did introduce that the Account was his
separate property.  Although Lori
complains that Tony lacked more direct evidence to overcome the presumption
that the foreign bank account was community property, in a bench trial the
judge, as factfinder, is the sole judge of the credibility of the witnesses and
weight to be given their testimony.  Dubree
v. Blackwell, 67 S.W.3d 286, 289 (Tex. App.CAmarillo 2001, no pet.); Leyva v.
Pacheco, 163 Tex. 638, 358 S.W.2d 547, 549 (1962).  The judge obviously resolved the disputed
evidence in favor of his findings.  In
light of our review of the entire record, we hold whether the trial judge could
reasonably conclude that the fact that Tony had accumulated personal savings of
at least $2,057,524.20 prior to the date of the parties= marriage was highly probable;
therefore, the evidence is factually sufficient.  Because the trial court=s conclusion of law number 5 is
correctly drawn from finding number 7, we hold conclusion 5 to be correct as a
matter of law.

B. 
Were Disbursements From The Account Community Property?








Lori
argues the Account monies received by Tony during their marriage represented
community property income on investments because Tony failed to claim an
interest in the Account when filing his tax returns between 1988 and 1997, and
when submitting a financial statement to a bank during that time.  She claims the money deposited in the Account
was earned by Rilco=s foreign subsidiaries, joint ventures, and other foreign
activities; therefore, when Tony repatriated funds for personal use from the
Account, they were cash dividends from Rilco, and, as such, gross income to
Tony under the Internal Revenue Code and Treasury Regulations.  Lori again challenges the credibility of Tony=s evidence because there was no
written agreement between Tony and John Rundell regarding the millions on
deposit in the Account, Tony was not a signatory authority on the Account, nor
did he personally deposit the funds into the Account.  However, Lori has no alternative explanation
for the business records that demonstrate retainage and guarantees were
required on Rilco=s overseas ventures. 
Nor did she challenge the trial court=s finding number 12 that Tony was not
a shareholder, officer, director, employee, or agent of Darwin Ltd. or the
several findings of fact concerning Tony=s total compensation paid from
Rilco.  Further, she neither suggests she
had additional federal tax liability for the couple=s receipt of Account monies during
the marriage, nor makes a challenge to findings of fact nos. 9, 10 and 11.[4]  Most importantly, she didn=t challenge finding of fact 31, which states: AAnthony J. Zagorski, Robert Adams,
CPA, Ken Zagorski, and John Rundell testified and documents were introduced
showing how the $2,057,524.20 mutated into assets or securities of Anthony J.
Zagorski or Rilco.@

In
an appeal from a nonjury trial, an attack on the sufficiency of the evidence
must be directed at specific findings of fact, rather than at the judgment as a
whole.  Carter, 736 S.W.2d at
777.  Unchallenged findings of fact are
binding on an appellate court unless the contrary is established as a matter of
law or there is no evidence to support the finding.  McGalliard v. Kuhlmann, 722 S.W.2d
694, 696 (Tex. 1986); Cohen v. Sims, 830 S.W.2d 285, 287B88 (Tex. App.CHouston [14th Dist.] 1992, writ
denied).  Any unchallenged findings of
fact that  support the judgment will
preclude reversal of the case.  Id. at
288; Lovejoy v. Lillie, 569 S.W.2d 501, 504 (Tex. Civ. App.CTyler 1978, writ ref=d n.r.e.) (court has no jurisdiction
to go behind findings not challenged). 
As a result, Lori=s failure to challenge these findings requires this reviewing
court to conclude that they support the parallel conclusions of law that the
Account and its mutations were Tony=s separate property.  The trial court found that the Account
represented the repayment of working capital Tony had acquired prior to his
marriage to Lori.  We agree. 








In
an alternative argument, Lori contends the Account was hopelessly commingled
with community property and defied resegregation because interest, representing
community income, was paid into it.  If
separate property and community property have been so commingled as to defy
resegregation and identification, the statutory presumption of community
property prevails; when separate property has not been commingled or its
identity as such can be traced, the statutory presumption is dispelled.  In re Estate of Hanau, 730 S.W.2d 663,
667 (Tex. 1987);  Tarver v. Tarver,
394 S.W.2d 780, 783 (Tex. 1965).   Courts
have no difficulty in following separate funds through bank accounts.  Sibley v. Sibley, 286 S.W.2d 657, 659
(Tex. Civ. App.CDallas 1955, writ dism=d). 
A showing of community and separate funds existing in the same account
does not divest the separate funds of their identity and establish the entire
amount as community when the separate funds may be traced and the trial court
is able to determine accurately the interest of each party.  Holloway v. Holloway, 671 S.W.2d 51,
60 (Tex. App.CDallas 1983, writ dism=d). 
Moreover, when separate and community property are commingled in a
single bank account, we presume the community funds are drawn out first, before
separate funds are withdrawn.  Smith,
 22 S.W.3d at 146.  The only requirement for tracing and the
application of the community‑out‑first presumption is that the
party attempting to overcome the community presumption must produce clear
evidence of the transactions affecting the commingled account.  See McKinley v. McKinley, 496 S.W.2d
540, 543B44 (Tex. 1973); Kuehn v. Kuehn,
594 S.W.2d 158 (Tex. App.CHouston [14th Dist.] 1980, no writ).








Lori
claims the Account represented funds comprised of both principal and interest
which the court could not segregate. 
According to the trial testimony, any interest on the Account was spent
by Rundell to finance marketing and bidding expenses for Rilco; it was never
earned by, or distributed to Tony during the marriage; therefore, no Account
disbursement ever included interest income. 
Yet, the documents do not support this argument because no marketing and
bidding expense withdrawals are listed at all during the marriage.  But the record does contain ample, clear
evidence to permit segregation of the separate and community funds in the
Account and shows that any community funds were depleted by community
expenses.  Tony introduced an exhibit
showing less than $115,000 in interest was earned during the marriage.  Another exhibit shows approximately $366,000
was withdrawn for marital living expenses. 
Lori cites no evidence rebutting the community-out-first
presumption.  See Tex. R. App. P. 38.1 (h); (brief must
contain appropriate citations to the record). 
Because the withdrawals for community expenses depleted the community
funds in the Account, the Account remained Tony=s separate account.  Tony=s tracing of the community funds into
and out of the Account rebutted the statutory presumption the Account was a
community asset.  See Smith, 22
S.W.3d at 147 (holding under application of community-out-first presumption,
where withdrawals from an account deplete community funds in the account, it is
error to award any portion of the remaining separate property funds to other
spouse).  Here, the evidence demonstrates
community funds in the Account were depleted. 
In sum, Account funds were not so commingled as to defy resegregation
and Tony dispelled the statutory presumption that the entire Account is
community property.  Thus, the trial
court correctly found that the balance of money in the Account was separate
property.  

C.  Was The Property Division Unfair and Unjust?

In
issue two, Lori argues items purchased with Account disbursements are community
property.  This argument must fail
because she failed to challenge finding of fact No. 31 as discussed
earlier.  Notwithstanding this, through
the voluminous accounting records introduced at trial Tony discharged his
burden of tracing by clearly identifying disbursements from his separate
property Account and mutations of his separate funds.  Withdrawals, the specific interest gained
from the Account, the fluctuating Account balance, and a description of all
transfers, including community expenditures made, are detailed in his Summary
of Telegraphic Transfers and supporting documents.  The trial court correctly concluded that the
disbursements from the Account were traced and properly awarded to Tony as his
separate property.








We
have already held finding of fact number 7 is supported by legally and
factually sufficient evidence, and conclusion of law number 5 is correct.  It necessarily follows that conclusion of law
number 6 is also correct.  The bulk of
the monies distributed from the Account were separate funds, and items
purchased with those separate funds were not subject to partition by the trial
court.  Cameron v. Cameron, 641
S.W.2d 210, 215 (Tex. 1982) (holding separate property of a spouse not subject
to divestiture by courts on divorce). Any community interest in the Account was
spent on community expenses.  Based on
the tracing of Account funds, we hold there was legally and factually
sufficient evidence for the factfinder to have determined accurately, without
surmise or speculation, the interests allocated to Tony were his separate
property.  Awarding one spouse property
purchased with funds that were also separate property does not render the award
unjust and unfair.  Thus,  we conclude that no redivision of the parties= community estate is required.  We overrule Lori=s first and second issues.

III.

Reimbursement

In
her third issue, Lori argues the community should have been reimbursed for community
funds expended on a twenty-five percent interest in a joint venture which owned
the Desert Mountain Ranch (the ARanch@), one of  Tony=s separate investments.  The trial court in its Findings of Fact and
Conclusions of Law concluded:

Findings of Fact

27.       LORI
ZAGORSKI failed to introduce evidence sufficient to prove the following claims
against ANTHONY J. ZAGORSKI and RILCO:

. . .

f.          Reimbursement or . . . .

 

Conclusions of Law

11.       LORI
ZAGORSKI failed to meet her required burden of proof regarding the following
claims against ANTHONY J. ZAGORSKI and RILCO: 

. . .

f.          Reimbursement . . . .

 

Lori contends the preceding finding
and conclusion are contrary to the evidence and entry of same constituted an
abuse of discretion.  








Reimbursement
is an equitable doctrine, and a court of equity is bound to look at all the
facts and circumstances to determine what is fair, just and equitable.  Penick v. Penick, 783 S.W.2d 194, 197
(Tex. 1988).  It is not available as a
matter of law, but lies in the broad discretion of the court.  Zieba v. Martin, 928 S.W.2d 782, 787
(Tex. App.CHouston [14th Dist.] 1996, no writ).
 If separate property receives
community expenditures during a marriage, the community estate is entitled to
seek reimbursement.  McCann v. McCann,
22 S.W.3d 21, 24 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).  The party requesting reimbursement must prove
the enhanced value, if any, attributable to the community expenditures.  McCann, 22 S.W.3d at 24; Lindsay v.
Clayman, 254 S.W.2d 777 (Tex. 1952). 

Lori
argues Tony expended $160,500 of community funds on the Ranch for which the
community estate should be reimbursed. 
Tony counters Lori didn=t prove two things; 
first, the funds expended were, in fact, community funds, and second,
the enhanced value of the Ranch attributable to any such community
expenditure.  There is conflicting
evidence about how much money in total was spent on the Ranch during the
marriage.  Lori claims $160,500 and Tony=s documents show $140,000.  Tony=s accountant testified only
$12,737.53 of community funds were spent on the Ranch.  The presumption is only community funds were
used for these expenditures; however, Tony rebutted this presumption with
evidence that his separate funds went into the bank and money market accounts
from which checks were written for the Ranch. 
As a result, the community presumption ceased to exist.  See McCann, 22 S.W.3d at 24.  








Even
if community funds were spent on the Ranch, it was Lori=s burden to show the enhanced value
to Tony=s separate estate.  See Zieba, 928 S.W.2d at 788 (holding
the enhancement value is the correct measure of reimbursement).  In her brief, Lori has not referred this
court to the portion of the record where the enhanced value of the Ranch
attributable to a community expenditure may be found.  See Tex.
R. App. P. 38.1 (h) (brief must contain appropriate citations to the
record).  Because Lori failed to
establish the enhancement in value to Tony=s separate estate from the community
expenditures on the Ranch, Lori has waived any right of reimbursement.  McCann, 22 S.W.2d at 24.  Accordingly, because the trial court had no
evidence upon which to base a finding regarding Lori=s reimbursement claim, entry of the
challenged finding and associated conclusion of law regarding reimbursement did
not constitute an abuse of discretion. 
Finding No. 27(f) and Conclusion of Law No. 11(f) stand, and we overrule
Lori=s third issue presented. 

Conclusion

We
affirm the trial court=s final decree of divorce.

 

 

 

/s/        John S. Anderson

Justice

 

Judgment rendered
and Majority and Dissenting Opinions filed August 19, 2003.

Panel consists of
Justices Anderson, Hudson, and Seymore. (Seymore, J. dissenting.)

 

 











[1]  Tony filed a
counter-petition seeking, inter alia, reimbursement for funds expended
to benefit the community estate, and for reimbursement of his separate estate
for funds expended to benefit Lori=s
separate estate.  These claims were
denied in the Final Decree of Divorce. 
No notice of appeal or cross-points have been presented on these issues.






[2]  On appeal,
Tony claims Lori waived her appellate argument because her points of error did
not challenge specific findings of fact or conclusions of law.  We disagree. 
Under the Rules of Appellate Procedure, the statement of an issue or
point will be treated as covering every subsidiary question that is fairly
included.  Tex. R. App. P. 38.1(e). 
Lori=s first and second issues challenge the trial court=s characterization of the Account and resulting
division of property; the third challenges denial of a reimbursement
claim.  In separate issues, Lori
specifically challenged Findings 7 and 27(f) as well as Conclusions of Law 5, 6
and 11(f) in her brief.  Her issues
fairly include a challenge to the findings of fact and conclusions of law
specified in her argument.  See
Stephenson v. LeBouef, 16 S.W.3d 829, 843 (Tex. App.CHouston [14th Dist.] 2000, pet. denied); Reyes v.
Storage & Processing, Inc., 995 S.W.2d 722, 725 (Tex. App.CSan Antonio 1999, pet. denied).





[3]  The record
shows these funds were used during the marriage to pay community living
expenses, purchase jewelry and a motorcycle for Lori, pay Tony=s Australian accountant, pay Tony=s separate property debt, purchase several vintage
Corvettes, a deck boat and a cigarette boat, loan money to Rilco, Unitel, and
his son by a prior marriage, make a gift to Tony=s
sister, and invest in stock.





[4]  These findings
are as follows:

 

9.  Lori
Zagorski did not list any income tax liability in her Trial Inventory and
Appraisement arising from the transfer of the aggregate $2,057,524.20 from
Darwin, Ltd.=s Hong Kong Bank Account.  

 

10.  Lori
Zagorski and [her] expert witness, Bill Stewart, CPA, offered no testimony that
there was an income tax liability to the parties arising from the transfer of
the aggregate $2,057,524.20 from Darwin Ltd=s Hong
Kong Bank account.

 

11.  Lori
Zagorski=s expert witness, Bill Stewart, CPA, testified that he
did not advise [Lori] that she should file amended Federal Income Tax Returns,
to report income arising from the transfers of the aggregate $2,057,524.20 from
Darwin Ltd=s Hong Kong bank account.