**Opinion issued February 23, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00147-CV

————————————

## SIXTO P. MEJIA, Appellant

## V.

## DIGNA BERNAL, Appellee

---

### On Appeal from the 257th District Court
### Harris County, Texas
### Trial Court Case No. 2019-07367

---

## MEMORANDUM OPINION

This appeal concerns the division of property between divorcing spouses. In three issues, Appellant Sixto P. Mejia contends the trial court erred by awarding Appellee Digna Bernal a disproportionate share of the marital estate and attorney's fees. We affirm.

## Background

Appellant Sixto P. Mejia ("Mejia") and Appellee Digna Bernal ("Bernal") lived together for 18 years before establishing a common-law marriage in late 2015, after Bernal's previous marriage in El Salvador legally dissolved.[1] They have two adult children and two minor children.

Mejia and Bernal separated in July 2018, and Bernal filed for divorce in January 2019 on the grounds of insupportability and cruelty. Bernal asked the trial court to appoint her and Mejia as joint managing conservators of their minor children and to grant her the right to designate the children's primary residence. Mejia answered and counter-petitioned for divorce, asserting that he should decide the children's primary residence and that the marriage was insupportable and should be dissolved because of Bernal's cruelty and adultery. Both parties sought a disproportionate share of the marital estate.

Bernal and Mejia reached a mediated settlement agreement as to the children and proceeded to a final hearing on the division of property in July 2021. The community property included certain bank accounts, Mejia's retirement benefits, several vehicles, and some debt. In addition, the parties owned two homes purchased

---

[1] Mejia claimed at trial that Bernal misled him about the finality of her Salvadoran divorce when they first moved in together. Bernal's counsel responded that Bernal was mistaken about the legal status of her prior marriage when she purported to marry Mejia in October 1997.

before their marriage as tenants in common: (1) a home on Holmwood Drive (where Bernal resided with the children after separating from Mejia), and (2) a home on Cataldo Court (where Mejia resided after the separation).

The only trial witnesses were Mejia and Bernal. Bernal testified that Mejia abused her "physically, psychologically, and sexually" during their 20-year relationship. She disclosed that Mejia hit her three times and forced her to have sexual intercourse, including anal intercourse to which she did not consent, on multiple occasions. Although she did not report the abuse to law enforcement, she told family and friends. Bernal acknowledged at trial that she had been dating another man, R. Alfaro, for about a year. She denied that she was romantically involved with Alfaro before separating from Mejia.

Bernal testified that she earned $1600 per month cleaning houses and had no other source of income. She did not receive retirement or health insurance benefits from her employers. Among other things, Bernal was responsible for making the mortgage payment on the Holmwood Drive home and the loan payments on two of three vehicles in her possession.[2] She testified that none of the vehicles were worth more than what was owed on them. In addition, Bernal was responsible for costs of up to $600 per month for one child to play baseball, and she owed $6000 in credit

---

[2]    It was undisputed that the parties' oldest son used and paid for the third vehicle in Bernal's possession.

card debt and more than $6000 in attorney's fees. Bernal acknowledged that Mejia paid $1500 per month in child support, but she testified that he had not paid $3200 in spousal support or $3000 in attorney's fees awarded by an associate judge in pretrial temporary orders in December 2019.

Mejia denied the abuse alleged by Bernal. He also testified that Bernal lied about being married to another man in El Salvador while also claiming to be married to Mejia. He explained that prior to December 2015, he was unaware that Bernal's prior Salvadoran marriage had not been dissolved legally. He believed that he and Bernal were living together as husband and wife before Bernal's Salvadoran divorce became final. He continued to live with Bernal after learning the truth. Mejia asked the trial court to consider in its property division whether Bernal desired to remarry with Alfaro.

Mejia testified that he earned between $4000 and $4600 per month working for a cleaning company. He had an employer-sponsored 401(k) plan with a balance of around $113,000.[3] Mejia also possessed two vehicles—one was paid for and one was not. Mejia was responsible for the remaining loan payments.

In its final decree of divorce, the trial court granted Bernal's petition and dissolved the marriage on the grounds of insupportability and cruelty. Although the decree does not recite that it awards a disproportionate division of the community

---

[3]     Bernal testified that Mejia's 401(k) balance was $117,000.

property or assign any value to the assets and debt allocated to the parties, the parties agree that the trial court awarded Bernal a greater share of the marital estate. The trial court awarded Bernal fifty percent of Mejia's retirement benefits and the three vehicles in her possession, one of which the decree instructs is for the use of the parties' adult son. In addition, the trial court recognized the home on Holmwood Drive and its corresponding debt as Bernal's separate property. The trial court ordered the sale of the Cataldo Court home and a 60/40 split of the sale proceeds in Bernal's favor.

Neither party requested findings of fact and conclusions of law.

## Property Division

In his first and second issues, Mejia contends the trial court abused its discretion by awarding Bernal a disproportionate share of the marital estate. While it is difficult to discern the precise nature of Mejia's complaint about the property division, Mejia points to portions of the trial transcript concerning Bernal's relationship with Alfaro, Bernal's discovery responses regarding an unequal share of the community property, and the occupancy and relative sizes of the parties' jointly owned homes. Mejia also cites cases examining the role of fault in property divisions. *See, e.g., Young v. Young*, 609 S.W.2d 758, 761–62 (Tex. 1980) (holding trial court may consider fault of one spouse in breaking up marriage when dividing property); *Hedtke v. Hedtke*, 248 S.W. 21, 22 (Tex. 1923) (recognizing trial court's

5

obligation to do "complete equity" in property division). Considering these references and citations and applying a liberal construction of Mejia's brief, we presume Mejia's first and second issues complain that there was no reasonable basis for Bernal to receive a larger share of the marital estate. *See* TEX. R. APP. P. 38.9 (briefing rules to be construed liberally); *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver.").

## A. Applicable Law and Standard of Review

In a divorce decree, the trial court must "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE § 7.001; *see Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018) (defining "just," "right," and "due regard"). The trial court has wide discretion in dividing the marital estate. *See Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). We presume the trial court exercised its discretion properly, and we will not disturb the trial court's property division on appeal absent a clear abuse of discretion. *Murff*, 615 S.W.2d at 698–99; *Mathis v. Mathis*, No. 01-17-00449-CV, 2018 WL 6613864, at *2 (Tex. App.—Houston [1st Dist.] Dec. 18, 2018, no pet.) (mem. op.). The trial court's ultimate division need not be equal if it is equitable. *Murff*, 615 S.W.2d at 698–99; *Zieba v. Martin*, 928 S.W.2d 782, 790

(Tex. App.—Houston [14th Dist.] 1996, no writ) (op. on reh'g). There must be some reasonable basis for an unequal property division. *See Fuentes v. Zaragoza*, 555 S.W.3d 141, 162 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.).

In exercising its discretion, the trial court may consider many factors, including the spouses' earning capacities, disparity of income and abilities, education, business opportunities, relative physical condition, relative financial condition, disparity of ages, size of separate estates, nature of the property, and the benefits the spouse who did not cause the marriage breakup would have enjoyed had the marriage continued. *Murff*, 615 S.W.2d at 699. "The circumstances of each marriage dictate what factors should be considered in division of the marital estate." *Roberts v. Roberts*, 531 S.W.3d 224, 232 (Tex. App.—San Antonio 2017, pet. denied) (citing *Young*, 609 S.W.2d at 761).

A trial court does not abuse its discretion if its decision rests on conflicting evidence or if there is some evidence of a substantial and probative character to support the property division. *Zieba*, 928 S.W.2d at 787. The appellant must show that the trial court's abuse of discretion caused a division of property so disproportionate that it is manifestly unjust and unfair. *Hedtke*, 248 S.W. at 23.

**B.     No Abuse of Discretion**

Ordinarily, to determine whether the trial court divided the marital estate in a "just and right" manner, we must have the trial court's fact findings on the value of the community property. *See Wells v. Wells*, 251 S.W.3d 834, 841 (Tex. App.—Eastland 2008, no pet.) ("It is difficult—if not impossible—to determine whether the trial court abused its discretion by dividing the marital estate when we do not know what percentage of the marital assets either party received."). "Without such findings, [we] cannot know the basis for the trial court's division of property, the values assigned to the community assets, or the percentage of the marital estate that each party received." *Goode v. Garcia*, No. 01-20-00143-CV, 2021 WL 6015296, at *6 (Tex. App.—Houston [1st Dist.] Dec. 21, 2021, no pet.) (mem. op.).

Because Mejia did not request findings of fact and none were filed, we do not know precisely what share of the marital estate either party received. But it is undisputed that the parties' community property was disproportionately divided in Bernal's favor, and thus we may assess whether an unequal distribution constitutes an abuse of discretion. *See Wells*, 251 S.W.3d at 841 (considering propriety of unequal division in absence of valuation findings because there was no dispute that property was disproportionately divided); *Mohindra v. Mohindra*, No. 14-06-00056-CV, 2007 WL 3072057, at *1–2 (Tex. App.—Houston [14th Dist.] Oct. 23, 2007, no pet.) (mem. op.) (same).

The trial court granted a divorce on both no-fault and fault grounds. In the absence of findings of fact, we do not know if the trial court considered evidence of fault on Mejia's part in making its property division. But fault is recognized as a factor that trial courts may consider when dividing community property. *See Murff*, 615 S.W.2d at 698; *Young*, 609 S.W.2d at 762; *see also Mohindra*, 2007 WL 3072057, at \*2 (acknowledging trial court's discretion to consider fault in dividing parties' marital estate even when no-fault divorce is granted). Bernal testified that she endured physical, psychological, and sexual abuse throughout the marriage. Although Mejia denied the abuse and attempted to elicit testimony that Bernal was also at fault because she deceived him about her marital status in El Salvador and became involved with Alfaro before ending her relationship with Mejia, the trial court could have disbelieved Mejia and believed Bernal. *See Murff*, 615 S.W.2d at 700 (noting trial court in divorce case has opportunity to observe parties on witness stand and determine their credibility); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) (instructing appellate court not to impose its own opinions on credibility and weight of witness testimony over those of factfinder).

The trial court also could have considered the evidence of the parties' needs and relative income, earning capacity, and financial condition. The testimony at trial established that Mejia's monthly income was more than double, and at times even triple, Bernal's monthly income. And his employment provided him additional

9

financial benefits that Bernal's did not. These disparities in income, earning capacity, and financial condition also support the trial court's unequal division of the marital estate. *Murff*, 615 S.W.2d at 699.

Given the evidence presented, we cannot say that the trial court's property division was manifestly unjust or unfair. We thus hold that Mejia has not shown the trial court abused its discretion.

We overrule Mejia's first and second issues.

### Attorney's Fees

In his third issue, Mejia contends the trial court erred by affirming the attorney's fees awarded to Bernal's counsel in temporary orders issued by an associate judge. Again, it is difficult to discern the precise nature of the error alleged by Mejia in this issue. His argument reads in its entirety:

> On December 10th, 2019, [Bernal's] counsel's Application for Temporary Orders was set for hearing. During that period, [Mejia's] counsel['s] wife ha[d] passed, he was not feeling well, and had appointments set with his primary physician, and he filed a motion for continuance specifying his reasons for requesting the continuance . . . . Notwithstanding, . . . [Bernal's] counsel proceeded with [her] request for temporary orders and the Associate Judge awarded her temporary attorney['s] fees. [Mejia's] counsel proceeded and filed his appeal [of] the Associate Judge['s] ruling, [and] the [trial] judge refused to consider his appeal.

Considering this argument and applying a liberal construction of Mejia's brief, we presume this issue challenges the attorney's fee award on the ground that the

temporary orders hearing should have been continued because Mejia's counsel was unavailable. *See* TEX. R. APP. P. 38.9; *see also Perry*, 272 S.W.3d at 587.

Mejia cites no legal authorities to support his argument. A brief must contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Failure to cite to any legal authority or to provide substantive analysis in support of an issue results in waiver. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 126 (Tex. 2018). We conclude Mejia has waived this issue by failing to cite any legal authorities.[4] *See Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 286 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd) ("Failure to cite any authority in support of a contention waives the contention.").

Even if Mejia had properly briefed this issue, he would be unable to show error. A trial court may not grant a continuance "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251. Absence of counsel generally does not establish good cause for a

---

[4]    We note Bernal's argument that Mejia has waived this issue for another reason: because he did not challenge the temporary orders by filing a petition for writ of mandamus in this Court. While the case law cited by Bernal recognizes that temporary orders like those issued here may be challenged through mandamus, *see, e.g.*, *In re Ostrofsky*, 112 S.W.3d 925, 928 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding), they do not stand for the proposition that a party challenging support obligations initially imposed in temporary orders *must* file a mandamus petition in lieu of an appeal from a final judgment confirming the temporary orders.

continuance "except it be allowed in the discretion of the court, upon cause shown or upon matters within the knowledge or information of the judge to be stated on the record." TEX. R. CIV. P. 253. And a trial court's denial of a motion for continuance due to unavailability of counsel typically will not be disturbed on appeal when the record is silent on whether the conflicting settings were avoidable or why counsel did not take earlier steps to make the trial court aware of the conflicting settings. *See, e.g.*, *R.M. Dudley Constr. Co. v. Dawson*, 258 S.W.3d 694, 701 (Tex. App.—Waco 2008, pet. denied) (concluding no abuse of discretion in denying motion for continuance when "record does not show the efforts, if any," taken by attorney to have conflicting proceeding reset and there was "no explanation why the motion for continuance was filed after the pretrial and on the day before trial").

Mejia sought a continuance of the temporary orders hearing because his counsel had "an immigration trial" and a doctor's appointment "scheduled for the same day."[5] It was incumbent on Mejia's counsel to notify the trial court promptly of these scheduling conflicts. *See* HARRIS CNTY. FAM. R. 8.7 ("It is the duty of counsel to report promptly to the court immediately upon learning of a conflicting engagement that might preclude that counsel's availability for trial. Failure to do so may result in sanctions."). The record calls into doubt whether he did so.

---

[5]    Although Mejia argues on appeal that the passing of counsel's wife was another reason for a continuance, that reason was not stated in the motion.

Despite being served with notice of the setting for the temporary orders hearing four days earlier, Mejia's counsel did not file his verified motion for continuance until 5:09 p.m. on the day before the hearing. *See In re K.A.R.*, 171 S.W.3d 705, 711 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (concluding appellant's attorney failed to notify trial court of conflicting settings as soon as she was aware of them, "which was no later than" date she received notice of trial court's order setting case for trial). The record is silent on whether Mejia's counsel took steps to avoid the conflicting trial setting or reschedule the conflicting doctor's appointment and as to why he did not notify the court of these conflicts sooner. Consequently, the record would not support disturbing the trial court's ruling. *See In re W.A.B.*, No. 14-18-00181-CV, 2019 WL 2181205, at *2–3 (Tex. App.—Houston [14th Dist.] May 21, 2019, no pet.) (mem. op.) (holding denial of motion for continuance was not abuse of discretion where father did not notify trial court of conflicting settings as soon as he was aware of them or explain why he failed to take earlier steps to avoid conflicting settings); *Reyna v. Reyna*, 738 S.W.2d 772, 775 (Tex. App.—Austin 1987, no writ) (holding counsel failed to take reasonable steps to avoid conflict).

We overrule Mejia's third issue.

## Conclusion

We affirm the trial court's final decree of divorce.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Kelly, Rivas-Molloy, and Farris.